UNITED STATES of America,
Plaintiff-Appellee,

v.

Paldo LOPEZ, Defendant-Appellant.

No. 76–1831.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Dec. 13, 1977.

Decided May 11, 1978.

Vernon Lewis, Asst. U. S. Atty., Kansas City, Kan. (E. Edward Johnson, U. S. Atty., and Richard L. Hathaway, Asst. U. S. Atty., Kansas City, Kan., on brief), for plaintiff-appellee.

Ernest C. Ballweg, Prairie Village, Kan., for defendant-appellant.

Before SETH, Chief Judge, and DOYLE and McKAY, Circuit Judges.

McKAY, Circuit Judge.

Defendant Lopez appeals from a jury conviction of conspiracy to dispense eight ounces of heroin in violation of 21 U.S.C. §§ 841(a)(1), 846 (1970). He claims that the court erred in denying his motion for judgment of acquittal at the close of the government's case, that the jury verdict was contrary to the weight of the evidence, and that a single remark of a government witness was so prejudicial as to deny him a fair trial.

## FACTS

Agent Marin, the government's principal witness, testified he negotiated with Villarreal, defendant's alleged coconspirator, for the purchase of eight ounces of heroin, taking delivery of three ounces sometime before August 11, 1975, with the understanding that the balance would be delivered at a later date. Pursuing this plan he met Villarreal in a lounge on August 11 at which time Agent Marin complained about the quality and price of the drugs and threatened to back out of the deal. Villarreal then walked over to the bar and talked briefly with defendant and Vargas, another coconspirator. He returned to agent Marin's table, bringing Vargas with him. After a brief discussion Agent Marin told Vargas to meet him in a nearby pool hall.

When Vargas arrived for the pool hall meeting he was accompanied by defendant. A discussion of the additional five ounces of heroin ensued. Agent Marin's precise testimony about that discussion is critical to this case. He testified:

I explained to Mr. Vargas and Mr. Lopez that the heroin was bad quality and too high priced. Mr. Lopez then asked me what kind of price did I want to pay for it, and I told him that five thousand or less would probably be a better price than what they were asking for it. Mr. Lopez then told me that he was in the cocaine business. He said that he was only there dealing that particular heroin because Vargas was a friend of his and he was trying to help him. Mr. Lopez told me he was capable of deliveries up to seven kilos of cocaine to me if I wanted it; and if I went ahead and purchased this heroin, that this would be a sign of good faith on my part, and we would then make arrangements to deliver large quantities of cocaine and good quality. I then told Mr. Lopez I was not going to buy it at that price, and that was final. Mr. Lopez then told me to take the—"I've got ten ounc-

es." He said, "you can pick out whatever five you want out of the ten, and I'll give it to you for $4,800." I then told Mr. Lopez, "Fine. I'll give you four thousand eight hundred for it tomorrow, not today, because I don't have the money on me today." He then agreed, and Mr. Vargas and Mr. Lopez then walked out of the pool hall.

Record, vol. 1, at 50–51. Agent Marin testified that Vargas delivered the five ounces as agreed and at defendant's price. Agent Marin's testimony on cross-examination did not waiver and he reaffirmed that it was defendant who set the price.

Testifying for the government after plea bargaining, Vargas confirmed the pool hall meeting and stated that he thought "it was [defendant who] set the price of [the heroin]." On cross-examination Vargas did not recant but did admit that he "controlled" whether the price set by defendant would ultimately be acceptable. While he equivocated about the existence of an "agreement" between defendant and himself, he neither offered an explanation for defendant's participation nor clearly indicated that defendant was a mere interloper. He also testified about a number of other matters which circumstantially connected defendant to the sale. He stated that Jack Rabbit was the source of the heroin sold to Agent Marin, and that defendant and Jack Rabbit, who both lived with Vargas during the summer of 1975, came from Texas with a quantity of "gummy-looking" heroin which "looked like" the government's exhibit.

An informant named Garcia also testified for the government. Although his memory was somewhat faulty and the examination was hampered by the need to use an interpreter, Garcia substantiated much of Agent Marin's testimony. When asked whether he remembered seeing defendant in the bar on August 11, Garcia stated through the interpreter: "Yes. He was involved in everything." Record, vol. 2, at 160. Defendant's counsel promptly objected. The trial judge immediately admonished the jury to disregard the statement because Garcia had merely stated his opinion, which was conjectural and was not proper evidence.

## MOTION FOR JUDGMENT OF ACQUITTAL

Defendant moved for judgment of acquittal at the close of the government's case pursuant to Rule 29 of the Federal Rules of Criminal Procedure and the motion was denied. However, since no Rule 29 motion was made at the close of all the evidence, we must initially determine whether the denial of defendant's motion is properly before us. We find that it is.

As a general rule, an appellate court will not review the record to determine whether the evidence is sufficient to sustain a guilty verdict unless the defendant moved for a judgment of acquittal. E. g., United States v. Parrott, 434 F.2d 294, 295 (10th Cir. 1970), cert. denied, 401 U.S. 979, 91 S.Ct. 1211, 28 L.Ed.2d 330 (1971); Maxfield v. United States, 360 F.2d 97, 102 (10th Cir.), cert. denied, 385 U.S. 830, 87 S.Ct. 67, 17 L.Ed.2d 66 (1966). Under that rule, a defendant who moved for a judgment of acquittal at the close of the government's case must move again for a judgment of acquittal at the close of the entire case if he thereafter introduces evidence in his defense because, by presenting such evidence, the defendant is deemed to have withdrawn his motion and thereby to have waived any objection to its denial. E. g., Lucas v. United States, 355 F.2d 245, 248 (10th Cir.), cert. denied, 384 U.S. 977, 86 S.Ct. 1873, 16 L.Ed.2d 687 (1966).

The waiver rule thus places the defendant on the horns of a dilemma if he believes his motion for acquittal made at the close of the government's case was erroneously denied. He can rest his case, thereby preserving his appeal, and face the risk of a conviction which may not be reversed, or he can present evidence of his innocence, thereby waiving his appeal from the original ruling, and assume the risk that this evidence may provide the missing elements in the prosecution's case. See, e. g., United States v. Martinez, 514 F.2d 334, 341 (9th Cir. 1975); Jaben v. United States, 349 F.2d 913, 91€

(8th Cir. 1965); *United States ex rel. Lukas v. Delaware,* 371 F.Supp. 1317, 1319 (D.Del. 1974).

The waiver rule has been subject to growing criticism and attack. Some courts have ameliorated its harsh effects by carving out exceptions from or limiting the application of the rule. *E. g., United States v. Perez,* 526 F.2d 859, 864 n. 10 (5th Cir.), *cert. denied,* 429 U.S. 846, 97 S.Ct. 129, 50 L.Ed.2d 118 (1976); *United States v. Polizzi,* 500 F.2d 856, 903 (9th Cir. 1974), *cert. denied,* 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975); *Cephus v. United States,* 117 U.S.App.D.C. 15, 17–20, 324 F.2d 893, 895–98 (1963); *United States v. Viale,* 312 F.2d 595, 601 (2d Cir.), *cert. denied,* 373 U.S. 903, 83 S.Ct. 1291, 10 L.Ed.2d 199 (1963). Moreover, several recent cases have impliedly or specifically rejected the waiver rule, making its continued validity at least questionable in three circuits. *United States v. Watkins,* 171 U.S.App.D.C. 158, 161, 519 F.2d 294, 297 (1975); *United States v. Burton,* 472 F.2d 757, 763 (8th Cir. 1973); *Powell v. United States,* 135 U.S.App.D.C. 254, 256–57, 418 F.2d 470, 472–73 (1969); *United States v. Rizzo,* 416 F.2d 734, 736 (7th Cir. 1969); *see* 8A Moore's Federal Practice § 29.05 (1977); C. Wright, Federal Practice and Procedure § 463, at 247 (1969); Comment, *The Motion for Acquittal: A Neglected Safeguard,* 70 Yale L.J. 1151 (1961). Where the waiver rule is abolished, denials of acquittal motions may be reviewed by appellate courts as of the time each motion was made—whether at the close of the government's evidence or at the end of the entire case. *United States v. Rizzo,* 416 F.2d at 736.

■ Notwithstanding these attacks, we need not resolve the severe difficulties of the waiver rule in this case. The rule has uniformly been held not to apply to cases in which the defendant did not present a defense after moving for an acquittal at the close of the prosecution's case. *E. g., United States v. Perez,* 526 F.2d at 864; *United States v. Kubeck,* 487 F.2d 1256, 1258 (6th Cir. 1973). While Villarreal presented testimony in his own defense, defendant rested without presenting a case. Although Villarreal's testimony was favorable as to defendant, it cannot be deemed to have waived defendant's prior motion. *United States v. Arias-Diaz,* 497 F.2d 165, 168 (5th Cir. 1974), *cert. denied,* 420 U.S. 1003, 95 S.Ct. 1446, 43 L.Ed.2d 761 (1975); *Cephus v. United States,* 117 U.S.App.D.C. at 19, 324 F.2d at 897. Since we can review the sufficiency of the evidence only as of the time the Rule 29 motion was made, we consider only the government's testimony in chief and exclude the affirmative evidence presented by codefendant Villarreal. *United States v. Henderson,* 524 F.2d 489, 490 n. 1 (5th Cir. 1975); *United States v. Bethea,* 143 U.S.App.D.C. 68, 70 n. 4, 442 F.2d 790, 792 n. 4 (1971).

■ In reviewing the denial of a motion for a judgment of acquittal, we must view the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the government to determine whether there is sufficient evidence from which a jury could find that the defendant is guilty beyond a reasonable doubt. *E. g., United States v. Coleman,* 501 F.2d 342, 345 (10th Cir. 1974); *United States v. Mallory,* 460 F.2d 243, 246 (10th Cir.), *cert. denied,* 409 U.S. 870, 93 S.Ct. 197, 34 L.Ed.2d 120 (1972); *United States v. Harris,* 441 F.2d 1333, 1336–37 (10th Cir. 1971). In passing upon the sufficiency of the evidence under that standard we may neither weigh conflicting evidence nor consider the credibility of the witnesses. *E. g., United States v. Weiss,* 431 F.2d 1402, 1407 (10th Cir. 1970); *Cartwright v. United States,* 335 F.2d 919, 921 (10th Cir. 1964).

■ To establish a prima facie case of conspiracy the government must introduce evidence sufficient to show each element of that crime. An illegal conspiracy is "an agreement between two or more persons to commit one or more unlawful acts, and is complete when one or more of the conspirators knowingly commit an act in furtherance of the object of the agreement." *United States v. Thomas,* 468 F.2d 422, 424 (10th Cir. 1972), *cert. denied,* 410 U.S. 935, 93 S.Ct. 1389, 35 L.Ed.2d 599 (1973). The

agreement may be either express or implied. All that is required is a meeting of the minds of the parties "in an understanding way with the single design to accomplish a common purpose." *Martin v. United States,* 100 F.2d 490, 495 (10th Cir. 1938), *cert. denied,* 306 U.S. 649, 59 S.Ct. 590, 83 L.Ed. 1048 (1939).

■ Defendant correctly argues that while association with conspirators and presence at the scene of a crime may raise a suspicion of guilt, such evidence is not sufficient to sustain a verdict of guilty on a conspiracy charge and that "mere knowledge or approval of or acquiescence in the object and purpose of a conspiracy without an agreement to cooperate in achieving such object or purpose does not make one a party to a conspiracy." *United States v. Butler,* 494 F.2d 1246, 1249 (10th Cir. 1974). While in *Butler* we noted that "because of the secretive nature of the crime [of conspiracy] the evidence is almost invariably circumstantial," we repeated the warning that a conviction should not be obtained by "piling inference upon inference:"

> Guilt must be determined individually and not merely by association. Our review of the evidence must therefore be especially meticulous. The evidence, when viewed in its entirety, must generate more than a mere suspicion of guilt, and where such evidence is equally consistent with both guilt and innocence the conviction cannot be sustained.

494 F.2d at 1252.

Defendant cites *Glover v. United States,* 306 F.2d 594 (10th Cir. 1962), and *Butler,* two conspiracy cases in which we reversed convictions because of evidentiary insufficiency. In *Glover* the defendant's conviction for conspiracy to facilitate the transportation and concealment of heroin was reversed because the evidence merely showed that the appellant was seen in the vicinity when another person made drug sales to government agents and appellant was seen talking to that other person.

In *Butler* three different defendants were acquitted because of insufficient evidence to support conspiracy convictions. The conviction of one of the defendants, Butler, was reversed because the government only proved that he took a government owned radio, which he believed to be "unaccountable salvage," to his quarters and left the radio behind when he was transferred. Such evidence, even taken in the light most favorable to the government, could not implicate the defendant in a conspiracy or even sustain his substantive conviction for receiving stolen property. The evidence regarding another defendant, Gregg, a civilian clerk at the redistribution and marketing facility at an Air Force base, merely showed that he suspected that two Air Force sergeants were withdrawing equipment which could not be used in their unit and that he knew some of it had been traded to other units. Gregg's conviction was reversed because the record revealed that he had done nothing more than provide ordinary service and assistance to the sergeants and there was no evidence of an agreement to cooperate or of actual cooperation in a conspiracy. A third defendant, Slomkowski, was a noncommissioned officer in charge of a teletype maintenance shop at the base. He obtained salvage equipment for use in his shop from Sergeant Greene, who plead guilty and testified as a government witness. Although the evidence was sufficient for suspicion or insinuation of guilt, especially since some of the equipment was found in Slomkowski's quarters, the conviction was reversed because the record was devoid of evidence regarding an agreement between Slomkowski and Greene and there was no evidence that Slomkowski knew the equipment was stolen.

The key distinction between this case and *Glover* and *Butler* is the uncontradicted evidence of defendant's active participation in the conspiracy. Here there is testimony that defendant was not just present at suspicious times or acquainted with guilty actors but that he actually committed an overt act clearly furthering the conspiracy. Defendant not only participated in the actual bargaining, but fixed the price of the contraband with the silent consent of a

coconspirator. Under the circumstances, defendant's participation and the acquiescence in that act by an alleged coconspirator support a finding of an agreement. Although the government's witness, Vargas, testified there was no explicit agreement with defendant, we conclude that defendant's active role in negotiation and price setting cannot be explained by any reasonable hypothesis other than knowing participation in the conspiracy.

We do not say this is an overwhelming case. We understand why the trial court hesitated and studied the matter before ruling on the motion for acquittal. This case approaches the outer limit of the proof necessary to sustain a conspiracy conviction. The limit must be drawn where doubt as to the presence of sufficient evidence to sustain a finding of guilty beyond a reasonable doubt does not exist. If we were in doubt, after conscientious application of the appropriate standards, that fact alone would require us to reverse. When, as here, we are not in doubt that the evidence meets the necessary standard, we do not hesitate to affirm.

## WEIGHING THE EVIDENCE

In addition to complaining that his motion for a judgment of acquittal was erroneously denied, defendant argues that his conviction was contrary to the weight of all the evidence. In making that claim, defendant misconstrues this appeal. His argument is nothing more than an assertion of a general ground for a new trial motion under Federal Rule of Criminal Procedure 33 and is unrelated to review of his Rule 29 acquittal motion. The government did not call to our attention defendant's failure to move for a new trial at the close of the evidence. The government merely cites *United States v. Downen*, 496 F.2d 314, 318 (10th Cir.), *cert. denied*, 419 U.S. 897, 95 S.Ct. 177, 42 L.Ed.2d 142 (1974), for the proposition that the test for reviewing the sufficiency of the evidence on appeal is the same under both defendant's theory that his motion for a judgment of acquittal was erroneously denied and his theory that his conviction was contrary to the weight of the evidence.[1]

However, since no Rule 33 motion was addressed to the trial court, we cannot review a ruling that was not made or requested and are thus not confronted with the knotty problem which often arises on appeal when a defendant requests both an acquittal and a new trial.[2] *See, e. g., Unit-*

1. Dicta in *Downen* declares that "in passing on a post-guilty Motion for Acquittal and/or for New Trial, the Trial Court must apply the same tests." 496 F.2d at 318. Although appellate courts may view both claims basically the same way, a trial court certainly does not. When considering a motion for a new trial under Federal Rule of Criminal Procedure 33 a trial judge considers the credibility of witnesses and weighs the evidence as a thirteenth juror. He does not view the evidence in the light most favorable to the government as he would in ruling on a Rule 29 acquittal motion. *E. g., United States v. Leach*, 427 F.2d 1107, 1111 (1st Cir.), *cert. denied*, 400 U.S. 829, 91 S.Ct. 95, 27 L.Ed.2d 59 (1970); *United States v. Phifer*, 400 F.Supp. 719, 722 (E.D.Pa.1975), *aff'd*, 532 F.2d 748 (3d Cir. 1976).

2. Although the rule is increasingly under attack and its continued vitality is uncertain, it is generally held that the double jeopardy clause of the United States Constitution does not preclude the retrial of a defendant where reversal results from a lack of sufficient evidence to support the jury's verdict. *E. g., Bryan v. United States*, 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed.

335 (1950). The result in *Bryan* has been severely criticized in a recent well-reasoned decision:

> Unlike reversals due to procedural errors of law that impair effective presentation of the defendant's case, reversals based on the failure of the prosecution's proof represent the *judgment of an appellate court that the defendant was entitled to a directed acquittal at trial.* By subjecting defendants who win such appellate reversals to retrial, *Bryan* serves to heighten rather than mollify disparities inherent in our criminal justice system, for, had the defendants been before other trial judges, they may well have received the directed acquittals to which they were entitled—acquittals from which the prosecution would have no appeal. . . .
>
> . . . To permit the State a second bite at the apple in these circumstances would not only interject inequity into the administration of criminal justice but also serve to condone and perhaps perpetuate careless prosecutorial trial preparation and practice.

*Sumpter v. DeGroote*, 552 F.2d 1206, 1211–13 (7th Cir. 1977). The *Sumpter* court avoided

*ed States v. Eaton,* 501 F.2d 77, 78 (5th Cir. 1974). Even if defendant had moved for a new trial below, we could not weigh the evidence as he requests. *United States v. Pennett,* 496 F.2d 293, 297 (10th Cir. 1974). Our review would be limited to determining whether the trial judge abused his discretion in denying defendant's motion. *Thomas v. United States,* 409 F.2d 730, 734 (10th Cir. 1969).

### PREJUDICIAL TESTIMONY

Defendant's final assignment of error, which we also reject, is that he was denied a fair trial by Garcia's in court statement that defendant was "involved in everything." Although defense counsel objected to the statement, it does not appear that a mistrial was requested. The court acted swiftly to cure the improper statement by sustaining defendant's objection and admonishing the jury to disregard the testimony. A mistrial should not be ordered in these circumstances unless the testimony "will create so strong an impression on the minds of the jurors that they will be unable to disregard it in their consideration of the case, although admonished to do so." *Maestas v. United States,* 341 F.2d 493, 496 (10th Cir. 1965). In light of all of the evidence and the corrective actions taken by the trial judge, no reversible error appears concerning Garcia's single improper statement.

AFFIRMED.

those undesirable consequences by concluding that the rule was inapplicable to the facts of that case. The *Bryan* result could have been avoided even if the rule had been deemed to be applicable because *Bryan* does not prevent an appellate court from exercising its discretion and ordering an acquittal because of evidentiary insufficiency—*Bryan* merely declares that a court is not required to do so. *See United States v. Dotson,* 440 F.2d 1224, 1225 (10th Cir. 1971).

A more direct confrontation with the confusion created by the *Bryan* rule is found in *United States v. Wiley,* 170 U.S.App.D.C. 382, 517 F.2d 1212 (1975), wherein the court held that "only in a narrow set of circumstances are retrials permitted in the interest of justice following reversals based on the insufficiency of the evidence to withstand the defendant's motion for judgment of acquittal." *Id.* at 384, 517 F.2d at 1214. The *Wiley* court used the statutory directive of 28 U.S.C. § 2106 (1970), which directs appellate courts to dispose of appeals "as may be just under the circumstances" as a rationale to order an acquittal even though the defendant moved in the alternative for a new trial. 170 U.S.App.D.C. at 388, 517 F.2d at 1218.