UNITED STATES of America, Appellee,

v.

Erwin Pascacio CLOTIDA,
Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Olivia Gertrude CHATTEN,
Defendant, Appellant.

Nos. 88–1902, 88–2039.

United States Court of Appeals,
First Circuit.

Heard May 5, 1989.

Decided Dec. 20, 1989.

Ramon E. Dapena, for appellant Erwin Pascacio–Clotida.

Frank Catala Morales, Bayamon, P.R., for appellant Olivia Gertrude Chatten.

Jose A. Quiles, Asst. U.S. Atty., Chief, Criminal Div., with whom Daniel F. Lopez–Romo, U.S. Atty., Hato Rey, P.R., was on brief for the U.S.

Before SELYA and ALDRICH, Circuit Judges, and RE,* Judge.

RE, Chief Judge:

Appellants, Erwin Clotida and Olivia Chatten, appeal from a judgment of conviction entered on August 15, 1988, following a jury trial in the United States District Court for the District of Puerto Rico. Clotida and Chatten were convicted of aiding and abetting each other in the possession with the intent to distribute cocaine, importation of cocaine, and possession of cocaine on board an aircraft in violation of United

---

* The Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation.

States Code, Title 18, Section 2, and Title 21, Sections 841(a)(1), 952(a), and 955.

Clotida and Chatten contend that the district court erred in denying their respective motions for acquittal made at the close of the government's case-in-chief pursuant to Rule 29 of the Federal Rules of Criminal Procedure. Clotida also contends that the trial judge "committed a reversible error by allowing the prosecutor to present, as rebuttal evidence, a substantial part of his case in chief, [a] ... confession by the appellant[,] ... Clotida."

■ The threshold question as to both Clotida and Chatten is whether they waived their rights on their Rule 29 motion because of their failure to have renewed the motion at the close of all the evidence. A question is also presented as to whether, under the circumstances of this trial, the government's use of Clotida's inculpatory statements in rebuttal rendered the trial unfair by unconstitutionally impairing his fifth amendment right to testify in his own defense.

Since, after having offered his own testimony as a defense, Clotida failed to renew his motion for acquittal at the close of all the evidence, his motion is deemed waived. His conviction, therefore, may only be reviewed under a "manifest injustice" standard. Upon an examination of all the evidence presented at trial, we find the evidence against Clotida to be sufficient to sustain a verdict of guilty. Since we find his contention as to the government's rebuttal evidence to be without merit, Clotida's judgment of conviction is affirmed.

Since Chatten did not offer any evidence in her own defense, her Rule 29 motion is not deemed waived. Therefore, only evidence presented in the government's case-in-chief may be considered. Since the evidence against Chatten "is largely circumstantial the test is 'whether the total evidence, including reasonable inferences, when put together is sufficient to warrant a jury to conclude that defendant is guilty beyond a reasonable doubt.'" *United States v. Mehtala*, 578 F.2d 6, 10 (1st Cir. 1978) (quoting *Dirring v. United States*, 328 F.2d 512, 515 (1st Cir.1964)). The total

evidence presented by the government in its case-in-chief against Chatten fails to support the jury's verdict of guilty beyond a reasonable doubt. Since her Rule 29 motion should have been granted, the judgment of conviction is reversed.

## BACKGROUND

Clotida and Chatten, residents of the Netherlands, went on vacation in Ecuador to "look for a beach." At trial, during cross-examination, Clotida, in response to questions by the prosecutor, admitted that he had purchased the airline tickets in Amsterdam on February 16, 1988, with his own money.

Clotida testified that he and Chatten arrived in Quito, Ecuador on February 27, 1988. While in Quito, Clotida claims to have been introduced to Serapio by a certain Vivian, who had travelled with Clotida and Chatten from Amsterdam to Quito. Serapio asked Clotida if he would take some luggage back to Amsterdam for him. Serapio told Clotida that he would receive a "reward" if he delivered the luggage at the airport in Amsterdam to "someone there who would have a sign in his hand with the name Serap[io] on it and [Clotida would] give it to that person." Clotida stated that because he was "broke," he accepted Serapio's offer.

Clotida testified that Serapio gave him "two pieces of luggage with clothing.... " According to Clotida, he did not check the contents of the suitcases until the night before he left Quito, March 5, 1988. Clotida testified that he opened the suitcases "[t]o make sure that there were only clothes in there, and that was so, there were only clothes in there."

Clotida also stated that because he had no suitcases of his own, he intermingled his and Chatten's clothes with those of Serapio. In addition, he testified that he borrowed a large suitcase from Vivian, in exchange for a smaller suitcase which he had brought to Ecuador. On cross-examination, Clotida denied that he detected cocaine in the clothes in the suitcases given to him by Serapio. He admitted, however,

that he did spray deodorant on his clothes, "so that they wouldn't smell like the others."

In his testimony, Clotida also stated that, on March 6, 1988, he and Chatten boarded an Iberia flight departing from Quito, Ecuador to Amsterdam, the Netherlands, with stop-overs in San Juan and Madrid. In the course of a cargo inspection in San Juan, United States Customs Inspector Hector Albino of the Contraband Enforcement Team (CET) noticed a "heavy" suitcase emitting a "chemical" or "perfume-like odor." Upon opening the suitcase, Inspector Albino found "various clothing which were soaked, that felt moist, wet, sticky to the touch, like they were starched." Inspector Albino made a field test which consisted of cutting a section of the garment and placing it in a tube with a chemical. He obtained a blue color reaction which indicated the presence of cocaine.

Inspector Albino proceeded to notify other members of the CET including the team leader, Juan Otado. Inspector Otado instructed the CET to check all luggage to Amsterdam, and, in particular, to check the baggage tag numbers of the luggage to see if they corresponded with the one containing the contraband. Upon further investigation, Customs Inspectors Nilsa Perez and Luis Gonzalez found two additional suitcases with the same baggage tag numbers. These suitcases were opened, and they too contained clothing which a field test revealed were impregnated with cocaine.

The Customs Inspectors seized the suitcases and proceeded to identify the passengers to whom they belonged. They asked flight attendants to search for passengers whose final destination was Amsterdam. Flight information indicated that, of the three persons who were bound for Amsterdam, one cancelled, leaving only Clotida and Chatten.

The Customs Inspectors went to the pre-boarding area to find Clotida and Chatten to verify that they were the owners of the suitcases in question. This verification was made by matching the baggage claim tickets Clotida had in his possession with those of the suitcases containing the contraband.

Clotida and Chatten were arrested, and were read their Miranda Rights in English. Because he stated he did not understand English, Clotida was also read his rights in Spanish. On Clotida's person were found the airline tickets, boarding passes, baggage claim tickets, and passports for both him and Chatten. In addition, Clotida was in possession of a formula for sodium carbonate ($Na_2CO_3$).

Clotida and Chatten were then taken to the Customs enclosure area where they were given the Miranda Warning in written form. Clotida was also given a "Waiver of Rights" form, which he signed, after he was told he was free to sign it "if he wanted to."

While Clotida was in the Customs enclosure area the seized suitcases were weighed. In answer to Inspector Otado's question as to the weight of the suitcases, Inspector Albino responded that the gross weight of the luggage was 133 lbs. Upon hearing this, Clotida commented "[t]hat's not correct because there's only 32 pieces of clothing that are saturated with cocaine."

At trial, in its case-in-chief, the government called as witnesses Customs Inspectors Albino, Otado, Perez and Gonzalez. They all testified as to their roles and actions as to the discovery and examination of the three suitcases which contained the contraband. Inspectors Albino and Otado also testified as to what took place when Clotida was taken into custody and was brought to the Customs enclosure area.

The government also called Sergeant Hiram Gomez Santini, of the Puerto Rico Police Department, who is assigned to the Drug Enforcement Agency (DEA). Sergeant Gomez testified that he was called to the airport on March 6, 1988, so that the Customs Inspectors could turn over the evidence seized in the arrest of Clotida and Chatten. He also testified as to what was done to the evidence once it came into his possession.

The government's last witness in its case-in-chief was Dorothy Ann Roman, a chemist, of the DEA. After qualifying as an expert, Ms. Roman described the analysis she performed on the contraband. She testified that "the net weight of the cocaine ... extracted [from the clothing] would amount to 5,895 grams." When questioned about the formula for sodium carbonate, which Clotida had on his person, she testified that sodium carbonate was "a common way ... to extract cocaine from another substance."

At the close of the government's case, pursuant to Rule 29 of the Federal Rules of Criminal Procedure, Clotida and Chatten moved for acquittal. Based on the evidence presented in the government's case-in-chief the motions were denied. In denying the motions the district court stated:

> Certainly, from that evidence a juror can make reasonable inferences to the effect that they planned this trip to go to a source of cocaine, to procure the cocaine, to conceal the cocaine as best as possible in the way it was impregnated into the clothing, and to bring that cocaine back to Holland, and that they both knew what was happening and they both knew that that was the purpose of the trip.

The defense consisted solely of the testimony of Clotida. Essentially, Clotida testified as to his trip to Ecuador with Chatten, and how he came to meet Serapio. He testified that "there were only clothes [in the suitcases]," and that he did not see any drugs. Clotida sought to exculpate Chatten by testifying that she had no knowledge of his meeting with Serapio, and that she had not aided him in packing the suitcases.

On cross-examination, Clotida denied that he had made the statement to Customs Inspectors, that there were "32 pieces of clothing ... saturated with cocaine." At the close of the defense, neither Clotida nor Chatten renewed their Rule 29 motion.

In rebuttal, the government impeached Clotida's testimony using statements he made after his arrest. Sergeant Hiram Gomez Santini testified that, after his arrest, Clotida was taken to the DEA district office in San Juan, and it was there that Clotida told Sergeant Gomez that:

> he looked inside the bag, touched the clothes, tasted them and smelled them and he determined that it was cocaine, and that a strong odor was coming from the clothing and that he was afraid of being detected by the authorities so he sprayed deodorant on the clothing and spread them in three different bags.

The jury found Clotida and Chatten guilty on all three counts of the grand jury indictment.

## I. The Rule 29 Motions

In pertinent part, Rule 29(a) of the Rules of Criminal Procedure provides that:

> The court on motion of a defendant ... shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

Fed.R.Crim.P. 29(a). The proper procedure for making a Rule 29(a) motion is set forth in the case of *United States v. Lopez*, 576 F.2d 840, 842 (10th Cir.1978):

> Under [this] rule, a defendant who moved for a judgment of acquittal at the close of the government's case must move again for a judgment ... at the close of the entire case if he thereafter introduces evidence in his [own] defense because, by presenting such evidence, the defendant is deemed to have withdrawn his motion and thereby to have waived any objection to its denial.

### A. As to Defendant Erwin Clotida

■ Clotida failed to renew his Rule 29 motion at the close of the entire case after having offered evidence in his own defense. This failure, therefore, constitutes a waiver of Clotida's Rule 29(a) motion. *See United States v. Kilcullen*, 546 F.2d 435, 441 (1st Cir.1976), *cert. denied*, 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977). Hence, on this appeal, Clotida may only prevail if it is demonstrated, after an examination of all the evidence offered at trial, that it

would be a "gross" or "manifest injustice" to sustain the conviction. *See United States v. Jimenez–Perez*, 869 F.2d 9, 11 (1st Cir.1989); *United States v. Cheung*, 836 F.2d 729, 730 n. 1 (1st Cir.1988) (per curiam).

The evidence at the trial reveals clearly that there is no doubt that Clotida carried the luggage or suitcases for financial gain. Furthermore, the circumstances indicate that Clotida was in constructive possession of the luggage. It is not questioned that Clotida was in possession and control of the baggage claim tickets. In addition, on Clotida's person was found the chemical formula to extract the cocaine from the impregnated clothing.

Other than the testimony of Clotida, which was refuted by the government and disbelieved by the jury, there is no evidence to rebut the inference that Clotida knew that the clothing was impregnated with cocaine. Sergeant Gomez testified that Clotida admitted his knowledge of the cocaine in the suitcase, and, in fact, tried to conceal its odor by spraying with deodorant. Moreover, Clotida's spontaneous utterance at the Customs enclosure area that there were "32 pieces of clothing ... saturated with cocaine" was found by the district court to be "voluntarily given ... prompted by himself without any question propounded to him."

Hence, as to Clotida, the evidence overwhelmingly supports the verdict of the jury. His testimony, that he was vacationing in Ecuador in search of a beach, and there met a stranger from whom he received the impregnated clothes, strains credibility. Since it was entirely reasonable for the jury to disbelieve his testimony, his conviction is clearly not a "manifest injustice."

### B. *As to Defendant Olivia Chatten*

█ Chatten did not present any evidence in her own defense, nor did her attorney examine her codefendant, Clotida. It has been uniformly held that if a defendant "rests without introducing evidence of his own he need not renew his [Rule 29] motion in order to preserve his objection to the sufficiency of the evidence. The motion need not be renewed, and defendant waives nothing, even if a codefendant has offered evidence." C. Wright, *Federal Practice and Procedure*, § 463 (2d ed. 1982) (footnotes omitted); *see also Lopez*, 576 F.2d at 843 (codefendant's testimony favorable to defendant not deemed to waive defendant's prior Rule 29 motion).

On the facts presented, therefore, Chatten did not waive the Rule 29 motion which she made at the close of the government's case-in-chief. Accordingly, in order to sustain Chatten's conviction it must be shown that, when examined in a light most favorable to the government, the evidence presented in the government's case-in-chief, including all inferences that may be drawn therefrom, would permit a reasonable juror to find guilt beyond a reasonable doubt. *See Lopez*, 576 F.2d at 843. Hence, in the language of *Lopez*, "[s]ince we can review the sufficiency of the evidence only as of the time the Rule 29 motion was made, we consider only the government's testimony in chief and exclude the ... evidence presented by codefendant" Clotida. *Id.* *See also United States v. Evans*, 572 F.2d 455, 475 (5th Cir.), *cert. denied sub nom. Tate v. United States*, 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978); *United States v. Polizzi*, 500 F.2d 856, 904 (9th Cir.1974), *cert. denied*, 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975); *Cephus v. United States*, 324 F.2d 893, 895–97 (D.C. Cir.1963).

Clotida and Chatten are charged with aiding and abetting each other in the commission of the offenses of possession with the intent to distribute cocaine, importation of cocaine, and the possession of cocaine aboard an aircraft. To help determine whether a party is an aider or abettor, the Supreme Court in *Nye & Nissen v. United States*, 336 U.S. 613, 619, 69 S.Ct. 766, 769, 93 L.Ed. 919 (1949), articulated the following test:

In order to aide and abet another to commit a crime it is necessary that a defendant "in some sort associate himself with the venture, that he participate in it as in something that he wishes to

bring about, that he seek by his action to make it succeed."
(quoting *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir.1938)).

In contrast to the evidence against Clotida, Chatten's connection with the criminal enterprise is based entirely on circumstantial evidence. Circumstantial evidence has been defined as "proof which does not actually assert or represent the proposition in question, but which asserts or describes something else, from which the trier of fact may either (i) reasonably infer the truth of the proposition, ... or (ii) at least reasonably infer an increase in the probability that the proposition is in fact true...." 1 D. Louisell & C. Mueller, *Federal Evidence* § 94 (1977). It has been noted that "[t]he ... general problem of circumstantial proof is to determine whether proffered evidence indirectly or inferentially supports the proposition sought to be proved." *Id.* at § 91.

It cannot be doubted, however, that circumstantial evidence is often very probative. As Professor Wigmore notes, without allowing the introduction of evidence that permits "an inference upon an inference," "hardly a single trial could be adequately prosecuted." 1A J. Wigmore, *Evidence* § 41 (1983). Indeed, "the courts in general have recognized that circumstantial evidence may, in given settings, have equal if not greater weight than direct evidence." 1 C. Torcia, *Wharton's Criminal Evidence* § 5 (14th ed. 1985). Furthermore, it is important to note that, in the context of review of a motion for acquittal, "no legal distinction exists between circumstantial and direct evidence." *United States v. Sutton*, 801 F.2d 1346, 1358 (D.C. Cir.1986).

The evidence presented by the government, in its case-in-chief against Chatten, is insufficient to sustain the jury's verdict of guilty. *United States v. Glover*, 814 F.2d 15 (1st Cir.1987), represents a fair example of the farthest that this court has ventured in sustaining a conviction based entirely on circumstantial evidence. In *Glover*, the defendant was convicted of a conspiracy to possess cocaine with intent to distribute.

On appeal, the defendant argued that the evidence was insufficient to support her conviction, "because there was no direct connection between her and either the drugs found in [her codefendant's] possession or the drug paraphernalia found in her home." *Id.* at 16. This court, however, sustained the conviction because the evidence showed that the defendant knew certain facts about the presence and location of the cocaine. *Id.* at 16–17.

In *Glover*, the court concluded that:
[T]he evidence of [the defendant's] knowledge of open drug activity in her apartment, combined with her control of the closet containing the cash, permitted the inference that she at least tacitly agreed to participate in a plan to possess cocaine with the intent to distribute it in which her role included providing the premises for the drug venture and controlling the funds generated as a result of it.

*Id.* at 17. Hence, we held that "the evidence, viewed as a whole in the light most favorable to the government, together with all legitimate inferences that can be drawn from it, was sufficient for a reasonable jury to conclude that [the defendant] conspired with the intent to distribute cocaine." *Id.* at 16–17.

In the present case, the evidence relied on to connect Chatten to the crime charged does not approach the evidence present in *Glover*. Rather, this is "a case of 'mere presence' in which [Chatten] was convicted simply because she was present at the scene of a crime and shared a relationship with the perpetrator." *Id.* at 17. Hence, the present case is more closely analogous to *United States v. Mehtala*, 578 F.2d 6 (1st Cir.1978), rather than *Glover*.

In *Mehtala*, the defendant was convicted of knowingly aiding and abetting in the importation of marijuana by boat. On appeal, this court noted that "[t]he Government's entire proof consisted of Mehtala's presence on the ship ... and inferences of a close relationship with the [ship's] captain." *Id.* at 10. The court stated that there was "[n]o evidence ... that Mehtala embarked on the voyage for any purpose

other than a pleasure cruise. There [was] no indication that she had a prior association with the captain, that she used marijuana, or that she had been engaged in previous drug operations." *Id.* The court reasoned that:

> Even if through the supposed close relation between Mehtala and the ... captain, Mehtala obtained knowledge of the presence of the marijuana, this knowledge would not be sufficient to convict her of aiding and abetting. "Mere association between the principal and those accused of aiding and abetting is not sufficient to establish guilt; nor is mere presence at the scene and knowledge that a crime was to be committed sufficient to establish aiding and abetting."

*Id.* (quoting *United States v. Francomano*, 554 F.2d 483, 486 (1st Cir.1977)). Hence, in *Mehtala*, this court reversed the conviction because the government had not proved the defendant's guilt beyond a reasonable doubt. *See id.*

In this case, the government, in its case-in-chief, presented no evidence that Chatten assisted Clotida in the smuggling of cocaine, or, even apart from assisting, had any knowledge of the presence of the cocaine. The government's case against Chatten consisted of the evidence of the clothing, impregnated with cocaine and found in the suitcases with baggage tag numbers that matched those in the possession of Clotida.

The evidence is clear, as the arresting officer Inspector Albino testified, that it was Clotida who "had both airline tickets, all the baggage claim tickets and both their passports." From the government's case-in-chief, the only evidence that may be said to connect or tie Chatten to the crime was the fact that she was present at the airport in San Juan, and had accompanied Clotida from Quito, Ecuador.

The remainder of the government's case dealt with the events that followed after the evidence was seized, and after Clotida and Chatten were arrested. That part of the testimony of Customs Inspectors Albino and Otado, which related to the events inside the Customs' enclosure area, pertained only to Clotida. The testimony of Sergeant Hiram Gomez Santini related to what happened to the contraband after it was released by Customs, and the testimony of Roman, a chemist for the DEA, dealt with the tests performed on the contraband. Indeed, the only testimony which pertained directly to Chatten after her arrest, related to the reading of her Miranda Warning.

■ In sum, no evidence in the government's case-in-chief indicated that Chatten "associate[d] [her]self with the venture, that [s]he participate[d] in it as in something that [s]he wishe[d] to bring about, that [s]he [sought] by h[er] action to make it succeed." *See Nye & Nissen*, 336 U.S. at 619, 69 S.Ct. at 769. It has been stated that "[m]ere association between the principal and those accused of aiding and abetting is not sufficient to establish guilt, nor is mere presence at the scene and knowledge that a crime was to be committed sufficient to establish aiding and abetting." *United States v. Francomano*, 554 F.2d 483, 486 (1st Cir.1977) (citations omitted).[1]

Chatten reaps the full benefit of the presumption of innocence. The presumption of innocence of an accused in a criminal trial is a fundamental principle of the common law. Blackstone, in his commentaries, discussing presumptions in the criminal law, asserted that "the law holds, that it is better that ten guilty persons escape, than that one innocent suffer." 4 W. Blackstone, Commentaries 352. In *McKinley's Case*, 33 How.St.Tr. 275, 506 (1817), Lord Gillies of the High Court of Justiciary at

---

1. The testimony of Clotida, which is outside the government's case-in-chief, established that Olivia Chatten was involved in an extramarital affair with Clotida, accompanied him from the Netherlands to Ecuador, and lodged with him in the same hotel room. Clotida also testified that he intermingled his and Chatten's clothes with the clothes given to him by Serapio, and put them all in the suitcases. For purposes of the Rule 29 motion, however, we may only consider the evidence in the government's case-in-chief and exclude the testimony of Clotida. *See Lopez*, 576 F.2d at 843. *See also Evans*, 572 F.2d at 475; *Polizzi*, 500 F.2d at 904; *Cephus*, 324 F.2d at 893.

Edinburgh asserted that "the presumption in favour of innocence is not to be re-dargued by mere suspicion.... I conceive that this presumption is to be found in every code of law which has reason, and religion, and humanity, for a foundation. It is a maxim which ought to be inscribed in indelible characters in the heart of every judge and juryman...." The origins of the presumption of innocence may be found in ancient Rome, and, indeed, can be traced to the codes of Athens and Sparta. *See Coffin v. United States*, 156 U.S. 432, 453–55, 15 S.Ct. 394, 402–03, 39 L.Ed. 481 (1895).

In the United States, with commendable brevity, Wigmore states that "[t]he presumption of innocence is fixed in our law." 9 *Evidence* § 2511 (emphasis omitted). In *Coffin*, in a portion of the opinion that is still valid and worthy of quotation, Justice Edward White stated that it "is the un-doubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Coffin*, 156 U.S. at 453, 15 S.Ct. at 402. The *Coffin* Court, in stressing the impor-tance of the presumption of innocence, con-cluded "that the presumption of innocence is evidence in favor of the accused intro-duced by the law in his behalf...." *Id.* at 460, 15 S.Ct. at 405. Professor Wigmore, however, notes that "[n]o presumption can *be* evidence; it is a rule about the duty of producing evidence." 9 *Evidence* § 2511 (emphasis in original) (citation omitted). In the words of Professor Wigmore, the "tem-poary aberration" caused by *Coffin*, as to the evidentiary effect of the presumption of innocence, "was soon afterwards dis-carded in the court of its origin." *Id.* (cit-ing *Agnew v. United States*, 165 U.S. 36, 51–52, 17 S.Ct. 235, 241, 41 L.Ed. 624 (1897); *Holt v. United States*, 218 U.S. 245, 253, 31 S.Ct. 2, 6, 54 L.Ed. 1021 (1910)).

The presumption is nonetheless basic and essential. An American scholar writes that it "is a substantive principle of law which is so engrained in the accusatorial system of American justice that no one challenges its preferred and unquestioned position." M. Bassiouni, *Criminal Law and Its Pro-cesses* § 2.2 (1969). The presumption also reflects a universally accepted norm pro-claimed as a human right and fundamental freedom in article 11 of the Universal Dec-laration of Human Rights. G.A.Res. 217, 3 U.N.GAOR 71, 73, U.N.Doc. A/810, at art. 11 (1948) ("Everyone charged with a penal offence has the right to be presumed inno-cent until proved guilty according to law....").

In *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970), the Supreme Court held that the due process clause of the United States Constitution "protects the accused against conviction ex-cept upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Beyond the rule that places the burden upon the prosecution of producing evidence to prove the accused guilty, Professor Wigmore states that "the presumption of innocence ... conveys for the jury a special and addi-tional caution ... to consider, in the materi-al for their belief, *nothing but the evi-dence*, i.e., no surmises based on the present situation of the accused." 9 *Evi-dence* § 2511 (emphasis in original).

Chatten did not waive her Rule 29 mo-tion. Considering, therefore, that the evi-dence presented by the government in its case-in-chief, including all inferences that could be drawn therefrom, was insufficient to have permitted the jury to find her guilty beyond a reasonable doubt, Chat-ten's conviction was improper. Hence, the district court erred in denying Chatten's Rule 29 motion.

The essence of any truly civilized crimi-nal justice system is fairness in the individ-ual case. In reversing Chatten's convic-tion, we are reminded that "[i]t is critical that the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt whether innocent [persons] are being condemned." *In re Winship*, 397 U.S. at 364, 90 S.Ct. at 1072. To deem the evidence presented against Chatten adequate would do violence to the presumption of innocence, and the due pro-cess requirement that a defendant be proved guilty beyond a reasonable doubt.

## II. *The Prosecution's Rebuttal*

■ Clotida also argues that, "in allowing the prosecutor to bring [in] what amounted to a confession through rebuttal," the district court abused its discretion by permitting the "surprise" of the defendant. Clotida asserts that the "sandbagging" tactics of the prosecution effectively deprived him of his fifth amendment right to testify in his own defense by impairing his ability to make an intelligent decision as to whether or not to testify.

■ It has been stated that "[t]he function of rebuttal is to explain, repel, counteract or disprove evidence of the adverse party. The fact that testimony would have been more proper for the case-in-chief does not preclude the testimony...." *United States v. Luschen*, 614 F.2d 1164, 1170 (8th Cir.) (citation omitted), *cert. denied sub nom. King v. United States*, 446 U.S. 939, 100 S.Ct. 2161, 64 L.Ed.2d 793 (1980). As the Supreme Court noted in *Geders v. United States*, 425 U.S. 80, 86, 96 S.Ct. 1330, 1334, 47 L.Ed.2d 592 (1976), the order in which the parties present their evidence is totally within the discretion of the trial court.

In determining whether the trial court has abused its discretion in any particular case, three factors must be considered: "(1) surprise to the defendant, (2) defendant's opportunity to meet the proof, and (3) detriment to the defendant because of the order in which the evidence was introduced." *Luschen*, 614 F.2d at 1170.

Notwithstanding Clotida's assertion, the facts and circumstances indicate that there was no "surprise" in this case. With full knowledge of the facts, Clotida assumed the risk of the consequences of testifying contrary to his own prior inculpatory statements. Surely, he can hardly claim "surprise" if the government would attempt to rebut his testimony, and delve into damaging statements that he had made after his arrest in the presence of DEA agents. Regardless of purpose or motive, whether to assert his innocence or exculpate Chatten, it was clearly his decision to testify and risk the consequences of rebuttal evidence.

Unlike cases in which there is non-disclosure by the prosecution, in violation of Rule 16, the government in this case allowed a complete open-file discovery so that Clotida was fully aware of the risks of taking the stand. *See United States v. Gladney*, 563 F.2d 491 (1st Cir.1977). Under the circumstances presented, there was no violation of Clotida's constitutional right to testify or remain silent.

## CONCLUSION

In agreement with the district court, we hold that Clotida waived his Rule 29 motion, and that there is no "manifest injustice" in sustaining the jury's verdict of conviction. Additionally, we hold that the district court did not abuse its discretion in permitting the government's rebuttal evidence.

The conviction of Chatten must be reversed because the evidence presented in the government's case-in-chief, including all inferences drawn therefrom, does not support the jury's verdict of guilty beyond a reasonable doubt. Her Rule 29 motion, therefore, should have been granted. Accordingly, the judgment of the district court is affirmed as to Clotida and reversed as to Chatten.

*So Ordered.*