**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Kevin BERRY, Defendant–Appellant.**

**No. 90–3048.**

United States Court of Appeals, Tenth Circuit.

April 29, 1991.

Christina L. Morris, Asst. U.S. Atty. (Lee Thompson, U.S. Atty., D. Kan., with her on the brief), Kansas City, Kan., for plaintiff-appellee.

Jill M. Wichlens, Asst. Federal Public Defender (Michael G. Katz, Federal Public Defender, with her on the brief), Denver, Colo., for defendant-appellant.

Before MOORE, ALDISERT,* and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Kevin Berry, the appellant, Steve Ramsey and John Wesley Lee, III were charged in a three-count indictment as follows: in count one, all three were charged with the distribution of approximately .2 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1); in count two, Berry and Ramsey were charged with the possession of approximately 8.8 grams of cocaine base with an intent to distribute the same, in violation of 21 U.S.C. § 841(a)(1); and in count three, Berry and Ramsey were charged with using or carrying a Smith and Wesson revolver and an RG revolver in connection with their possession with intent to distribute approximately 8.8 grams of cocaine base, as charged in count two, in violation of 18 U.S.C. § 924(c). As to each count, the defendants were charged with aiding and abetting in the commission of the particular offense charged, in violation of 18 U.S.C. § 2.

Lee pleaded guilty to count one of the indictment and was sentenced to fourteen months imprisonment. At the trial of Berry and Ramsey, Lee testified as a government witness. The jury convicted Berry on all three charges but acquitted Ramsey on all three charges. Berry was sentenced to imprisonment for eighty-seven months on each of counts one and two, to be served concurrently. On count three, Berry was sentenced to sixty months imprisonment, to be served consecutively to the sentences imposed on counts one and two. He now appeals the judgment entered and the sentences imposed.

On appeal, Berry raises what are basically two arguments: (1) the evidence was legally insufficient to support his conviction on any of the three counts; and (2) as to count three, there was a fatal variance between the charge as set forth in the indictment and the evidence presented by

* Honorable Ruggero J. Aldisert, United States Senior Circuit Judge for the Third Circuit Court of Appeals, sitting by designation.

the government at trial. We are not persuaded.

At trial, at the conclusion of the government's case, Berry moved for a judgment of acquittal as to all three counts under Fed.R.Crim.P. 29. That motion was denied.[1] Thereafter Berry did not testify nor did he call any witnesses. The latter is mentioned merely to show that all the evidence adduced at trial concerning Berry was presented by the government.

We note at the outset that in reviewing the denial of a motion for a judgment of acquittal, we view the evidence "in the light most favorable to the government to determine whether there [was] sufficient evidence from which a jury could find that the defendant [was] guilty beyond a reasonable doubt." *United States v. Lopez,* 576 F.2d 840, 843 (10th Cir.1978). Similarly, in determining whether the evidence presented at trial was sufficient to support a conviction, we consider "both the direct and circumstantial evidence, including reasonable inferences that can be drawn, in the light most favorable to the prosecution." *United States v. Cuch,* 842 F.2d 1173, 1178 (10th Cir.1988). A brief review of the government's evidence regarding Berry will demonstrate that Berry's motion for a judgment of acquittal was properly denied and that the jury's verdict finding Berry guilty on all three counts was amply supported.

Two undercover Kansas City, Kansas detectives in an unmarked car embarked on a "buy-bust" drug operation in Kansas City. The operation involved the detectives making street buys of drugs from street vendors and then having support units, after obtaining information from the undercover detectives, make the arrests of the sellers involved and, hopefully, their sources. While thus engaged, the undercover agents were flagged down by John Lee. Lee asked the officers what they wanted. One of the officers said a "20," which in street terms means a $20 rock of crack cocaine or cocaine base. Lee said he didn't have any

crack on his person, but that he could take them to a place where they could get it. The officers declined the offer and were about to leave the scene when Lee flagged down a passing car and began talking to someone on the driver's side of the stopped vehicle. Berry was the driver of this vehicle. Lee next returned to the unmarked car of the undercover agents and said, "They've got it." At this time, Lee apparently also informed the detectives that it would cost them $30, not $20. The officers then told Lee that they would give him $10 and that when he brought back the crack, they would give him the rest of the money.

As stated, Berry was the driver of the vehicle which Lee had flagged down. There were two other individuals in the car with Berry. Ramsey was seated in the front seat, passenger side, and a William Johnson ("Binky") was in the back seat. Without going into detail, in response to questioning by Lee, Johnson produced approximately .2 grams of cocaine base which Lee then took to the undercover agents. While Lee was at the undercover agents' vehicle and delivering the cocaine, Berry, Ramsey, and Johnson all got out of Berry's car and started walking toward the undercover agents' vehicle. When Lee started to return with the balance of the purchase price, the three, and Lee, returned to Berry's car.

The undercover agents, believing that there might be more drugs in Berry's vehicle, followed it for several blocks. At some point, Berry pulled over to the side of the street and turned off his lights. After the undercover agents' vehicle passed his car, Berry began to chase the detectives. During this chase, shots were fired by occupants of Berry's car at the undercover agents' vehicle. Berry continued to chase the detectives until the cars reached a point where support units became involved and began to chase Berry's vehicle. Shortly thereafter, Johnson jumped out of Berry's car with a gun in his hand. Also, after the support units began chasing Berry's ve-

---

**1.** Berry renewed his motion for judgment of acquittal at the close of all the evidence. This motion was also denied.

hicle, Berry was observed throwing an object out of his car. The object was later retrieved and identified as a large rock of cocaine base (approximately 8.56 grams). Finally, during the chase by the support units, the police observed what appeared to be a gun being thrown from the moving vehicle. A subsequent search of the area revealed an RG revolver, found in the area where Johnson jumped out of Berry's car, and a Smith and Wesson revolver, found along the chase route. After his arrest, Berry was searched and the police found, *inter alia*, a ten-dollar bill and a twenty-dollar bill which were identified as the money given Lee by the undercover agents for the cocaine base they purchased from him.

■ For our analysis of the evidence, we will assume that although Berry and Lee were acquainted with each other, the two of them met by accident on the night in question and not by prior arrangement. Further, we shall assume, as the evidence indicated, that the cocaine which was sold to the undercover agents was produced by Johnson[2] and that until Johnson advised Lee that he had some cocaine for sale, Berry was unaware of the fact.

In arguing that the evidence is insufficient to support Berry's conviction on count one, i.e., the distribution of the .2 grams of cocaine base to the undercover agents, or aiding and abetting the same, counsel relies on the rationale of *United States v. Grey Bear*, 828 F.2d 1286 (8th Cir.), *vacated in part*, 836 F.2d 1088 (8th Cir.1987), *on rehearing*, 863 F.2d 572 (8th Cir.1988), *cert. denied*, — U.S. —, 110 S.Ct. 846, 107 L.Ed.2d 840 (1990). In that case the Eighth Circuit indicated that, generally speaking, to find one guilty of a crime as an aider and abettor, there must be proof that he shared a criminal intent with the principal and "there must be a community of unlawful purpose *at the time the act is committed.*" (Emphasis added). Applying the language of *Grey Bear* to the instant case, counsel argues that at the moment of the delivery of the .2 grams of cocaine base by Lee to the undercover agents, Berry had done nothing to make him an aider and abettor. We disagree. The evidence in the instant case meets even the perhaps overly stringent test of *Grey Bear*.

Just before the actual delivery of the cocaine base by Lee to the undercover agents, Berry, Ramsey, and Johnson all got out of Berry's vehicle and started walking toward the undercover agents' car. The government argues that such permits the inference that Berry and the others were fearful that Lee might drive off with the undercover agents without giving them the balance of their purchase price. Such, in our view, is a permissible inference. Further, after Lee first talked with Berry and the other occupants of his car and ascertained that Johnson had some cocaine base, Lee then returned to the undercover agents' car and advised the agents that there was a source of cocaine base in the other vehicle. During this time, Berry did not drive away. Rather, he remained there, thus facilitating the delivery. And, of course, the $10 bill and the $20 bill given Lee by the detectives for the cocaine base they purchased from him were in Berry's possession at the time of his arrest. In our view, the evidence supports Berry's conviction on count one.

■ As to count two, Berry was observed throwing a plastic bag from his moving car while being chased by the support units. As above mentioned, it was later determined that this bag contained approximately 8.56 grams of cocaine base. We recognize that Berry's throwing of the cocaine base from the window of his moving car is not the sort of "distribution" contemplated by the statute. But such misses the mark. Count two charged Berry with possession or aiding and abetting the possession of approximately 8.8 grams of cocaine base with an intent to distribute the same. The act of throwing indicates that prior thereto Berry did possess the cocaine base. And the amount of cocaine base involved, coupled with the fact that approximately .2 grams of the same rock of cocaine base had just been distributed by Johnson from Berry's vehicle, permit the

---

2. Johnson, a juvenile, was not a defendant in the present proceeding.

inference that such cocaine base was not intended for personal consumption, but for distribution.

In connection with count two, we also note that Berry was the driver of the car in question at all relevant times, even after he discovered that Johnson possessed cocaine base and after the support units began chasing him. Hence, in our view, the evidence presented by the government against Berry was, at the very least, sufficient to convict him of aiding and abetting the possession with intent to distribute approximately 8.8 grams of cocaine base.

Counsel next argues that since count two should be reversed, Berry's conviction on count three must also be set aside. The basis for this argument is that count three charged Berry with using or carrying firearms or aiding and abetting in the using or carrying of firearms in connection with the charge in count two, i.e., the possession with an intent to distribute approximately 8.8 grams of cocaine base. Since we are affirming Berry's conviction on count two, this particular argument must also fail.

Counsel finally contends that there was a fatal variance between the crime charged in count three and the government's evidence adduced at trial in support thereof. This matter was not raised in the district court, but in this court counsel argues that the variance constituted plain error. In our view, there was no error, plain or otherwise.

Specifically, count three charged Berry with using or carrying, or aiding and abetting in the using or carrying, a Smith and Wesson .38 revolver and an RG .38 revolver in connection with the possession with an intent to distribute approximately 8.8 grams of cocaine base. The government's evidence indicated that a gun was thrown from the driver's window of Berry's vehicle during the chase by the support units. The government's evidence also showed that Johnson had a gun in his hand when he jumped out of Berry's car. A subsequent search of the premises disclosed a Smith and Wesson revolver, found along the chase route, and an RG revolver, found in the area where Johnson jumped out of Berry's car.

Counsel points out that even after these two guns were out of Berry's vehicle, there was some testimony presented by the government concerning additional gunshots, all of which showed that there was a third weapon in the vehicle. Assuming that there was evidence of a third weapon in the car, such did not defeat the charge in count three of the indictment that Berry used or carried, or aided and abetted in the using or carrying, the Smith and Wesson revolver and the RG revolver. Further, contrary to counsel's assertion, such evidence did not so prejudice Berry that he was unable to prepare an adequate defense to count three. Nor did this evidence expose him to risk of double jeopardy. We do not read the prosecutor's closing argument as indicating that the jury could convict Berry on the third count even if they did not believe he used or carried the Smith and Wesson revolver or the RG revolver, or aided and abetted in such using or carrying, as long as they believed he used or carried the "third gun," or aided and abetted in such using or carrying. And we know that counsel made no objection at trial to the prosecutor's comments concerning count three.

Judgment affirmed.