February 23, 1993
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 91-2079
UNITED STATES OF AMERICA,

Appellee,
v.

ANGEL LUIS MORALES-CARTAGENA,
Defendant, Appellant.

No. 91-2080

UNITED STATES OF AMERICA,
Appellee,

v.
WILFREDO ALVARADO-ORTIZ,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jose Antonio Fuste, U.S. District Judge]

Before
Torruella, Circuit Judge,

Campbell, Senior Circuit Judge,
and Stahl, Circuit Judge.

Javier A. Morales Ramos and Jeffrey M. Williams with whom
Indiano, Williams & Weinstein-Bacal was on brief for appellants.
Jeanette Mercado-Rios, Assistant United States Attorney, with
whom Daniel F. Lopez-Romo, United States Attorney, and Jose A. Quiles
Espinosa were on brief for the United States.

February 23, 1993

CAMPBELL, Senior Circuit Judge. Angel Luis Morales

Cartagena and Wilfredo Alvarado Ortiz were convicted along with co-

defendants Luis Alfredo Alvarado and Juan Eugenio Lorenzi Padilla of

aiding and abetting in the unlawful possession with intent to

distribute approximately 267 kilograms of cocaine aboard a United

States vessel, 46 U.S.C. 1903(c)(1)(D) and (f), 18 U.S.C. 2, and

aiding and abetting in the importation of cocaine into the customs

territory of the United States, 21 U.S.C. 952(a), 18 U.S.C. 2. On

appeal, Morales and Alvarado ask us to reverse their convictions,

alleging an insufficiency of evidence, erroneous jury instructions,

and prosecutorial misconduct. We affirm the convictions.

I. I.

A. Sufficiency of the Evidence

Appellants assert that as there was insufficient evidence of

criminal intent, the district court erroneously denied their Rule

29(a) motions for judgment of acquittal. In reviewing a properly

preserved Rule 29 motion, we examine the evidence and all legitimate

inferences therefrom in the light most favorable to the government to

determine whether a rational jury could have found guilt beyond a

reasonable doubt. E.g., United States v. Gonzalez-Torres, 980 F.2d

788, 790 (1st Cir. 1992); United States v. Clotida, 892 F.2d 1098,

1103 (1st Cir. 1989).

The government argues that appellants waived their Rule 29

motions by presenting evidence after the government concluded its

case-in-chief and by failing to renew the motions at the close of the

-2-

evidence. Were this so, our review would be for plain error only.1

E.g., United States v. Alfredo Alvarado, Nos. 91-2075, 2076, slip op.

at 6 (1st Cir. Dec. 31, 1992); United States v. Arango-Echeberry, 927

F.2d 35, 37 (1st Cir. 1991); Clotida, 892 F.2d at 1103. However, we

need not decide whether appellants waived their Rule 29 motions. Even

assuming they did not, the evidence was sufficient for a rational jury

to find that appellants were guilty beyond a reasonable doubt.

Appellants urge that "mere presence" at the scene is not

enough to convict a defendant of aiding and abetting in the commission

of a crime. E.g., Clotida, 892 F.2d at 1104. They assert the

evidence merely showed that they were present on a vessel in an area

of the open sea where an air drop of bales of cocaine took place.

They analogize their conviction to that of innocent crew members on

board a sailboat taking part in the Grand Regatta Columbus2 solely

because crew members in another sailboat in the regatta committed a

crime. Appellants' analogy does not wash.

1. We upheld the convictions of co-defendants Luis Alfredo Alvarado
and Juan Eugenio Lorenzi Padilla against a challenge to the
sufficiency of the evidence under the plain error standard. See
United States v. Alfredo Alvarado, Nos. 91-2075, 2076, slip op. at 5-7
(1st Cir. Dec. 31, 1992). The opinion in that case contains a more
exhaustive account than we provide here of the relevant facts and
circumstances surrounding the convictions of appellants and their co-
defendants.

2. The Grand Regatta Columbus was a celebration of the 500th
anniversary of Columbus' discovery of America in which hundreds of
vessels from dozens of nations took part in a five-month race from
Europe to America and back in the spring and summer of 1992. M.E.
Malone, CADIZ to Boston; Grand regatta pays homage to Columbus'
voyage, Boston Globe, July 5, 1992.

-3-

Rather than being aboard only one of hundreds of vessels

taking part in a regatta, appellants were in one of two vessels over

which a suspect aircraft was seen to hover. Flying at night without

lights and with no flight plan, the aircraft made tight circles about

300 to 500 feet above the two vessels. A Customs Service pilot

following the suspect aircraft testified to having seen moving lights

from the vessels. From this a reasonable jury could infer that the

vessels wished to be visible to the aircraft. Bales of cocaine were

dropped in proximity to the vessels from the aircraft, after which the

vessels began heading north towards the shore with their navigation

lights turned off. At first the two boats traveled together at a

distance of about 100 yards. After the second vessel veered off in a

westerly direction, a police helicopter was directed over the first

vessel, occupied by the appellants. The helicopter was lit and

identified as a police helicopter by the letters "FURA," which were

twelve to sixteen inches long. A police sergeant aboard the

helicopter gestured for appellants to stop. Appellants looked up,

reduced speed, and then accelerated. When a police marine vessel

subsequently approached, appellants' vessel veered off in order, it

might be inferred, to get away. While other explanations were

offered, a jury could reasonably conclude from this conduct that

appellants were conscious of having engaged in criminal activity and

were more than mere inadvertent bystanders at the drug drop. United

States v. Lopez, 944 F.2d 33, 40 (1st Cir. 1991); United States v.

Hernandez-Bermudez, 857 F.2d 50, 54 (1st Cir. 1988); United States v.

-4-

Flores Perez, 849 F.2d 1, 3 (1st Cir. 1988); United States v. Alvarez,

626 F.2d 208, 210 (1st Cir. 1980).

The fishing gear found aboard both vessels was wrapped up

and not prepared for fishing. No bait or fish were found on either

vessel. No fishing nets were found in the area. As fishing was

apparently not their purpose, the jury could infer that appellants had

another purpose for their nighttime sojourn on the sea. Although no

cocaine was found aboard appellants' vessel, four bales of cocaine

were discovered on the companion vessel. A connection between the two

vessels was suggested not only by their proximity when first seen but

by evidence that appellant Wilfredo Alvarado Ortiz was related to co-

defendant Luis Alfredo Alvarado. "While innocent association with

those involved in illegal activities can never form the sole basis for

a conviction, . . . the existence of a close relationship between a

defendant and others involved in criminal activity can, as part of a

larger package of proof, assist in supporting an inference of

involvement in illicit activity." United States v. Ortiz, 966 F.2d

707, 713 (1st Cir. 1992) (citing Nye & Nissen v. United States, 336

U.S. 613, 619 (1949)), cert. denied, 61 U.S.L.W. 3479 (1993).

Criminal intent may, of course, be inferred from

circumstantial evidence. E.g., United States v. Gomez-Villamizar, No.

92-1228, slip op. at 9 (1st Cir. Dec. 23, 1992); Ortiz, 966 F.2d at

711; United States v. Rodriguez- Alvarado, 952 F.2d 586, 590 (1st Cir.

1991). Here, numerous factors, including the unlighted, clandestine

airplane maneuvering over the two boats, the lights on the vessels,

-5-

their proximity to the cocaine when dropped, the fact that appellants'

vessel was running without navigational lights, the finding of cocaine

bales on the companion vessel, and the lack of support for their being

engaged in fishing or some other innocent occupation, constituted

substantial evidence from which a jury could infer that appellants

possessed the requisite criminal intent. See Alfredo Alvarado, Nos.

2075, 2076, slip op. at 6-7 (1st Cir. Dec. 31, 1992).

B. Jury Instructions

Appellants contend that the district court's instructions to

the jury were erroneous, misleading, and created impermissible

mandatory presumptions of guilt. Pointing to isolated excerpts from

assorted instructions regarding intent to distribute, possession, and

aiding and abetting, appellants complain that the jury was allowed to

convict appellants for merely being present at the scene of a drug

drop.

We review a district court's charge as a whole, not in

isolated excerpts. E.g., United States v. Hallock, 941 F.2d 36, 42

(1st Cir. 1991); United States v. Boylan, 898 F.2d 230, 244 (1st

Cir.), cert. denied, 111 S. Ct. 139 (1990); United States v. Cintolo,

818 F.2d 980, 1003 (1st Cir.), cert. denied, 484 U.S. 913 (1987).

Viewing the charge in this manner, appellants' arguments have little

force. For example, appellants object to the district court's

definition of possession with intent to distribute. The district

court defined this element as possessing "with intent to deliver or

transfer possession of a controlled substance to another person with

-6-

or without any financial interest in the transaction." We see nothing

wrong in this. See Pattern Jury Instructions (Criminal Cases), Fifth

Circuit, Instruction 45, at III-73 (1991); Federal Judicial Center,

Pattern Criminal Jury Instructions (1987), Instruction 112, at 147.

Appellants contend that the instruction would permit a jury to convict

appellants and their co-defendants for delivering cocaine to the

police. This argument, however, ignores the fact that the district

court clearly and correctly defined the elements of willfulness,

intent, and knowledge elsewhere in the charge. Considering the charge

as a whole, we find nothing that would cause the jury to convict

appellants without finding the requisite criminal intent.

Appellants make a similar argument as to the district

court's definition of constructive possession. According to

appellants, the definition was misleading because the required

intentional aspects were only vaguely and ambiguously defined.

Because appellants failed to make this objection to the charge at

trial, we will reverse only upon a showing of "plain error." E.g.,

United States v. De La Cruz, 902 F.2d 121, 122 (1st Cir. 1990); United

States v. Nazzaro, 889 F.2d 1158, 1166 (1st Cir. 1989); Fed. R. Crim.

P. 30. Appellants have not shown plain error. The district court

defined constructive possession as "knowingly [having] the power and

the intention, at a given time, to exercise dominion or control over a

thing, either directly or through another person or persons." This

definition, which clearly required both knowledge and intent, is

similar to one we have approved in the past. See, e.g., United States

-7-

v. Garcia, Nos. 92-1427, 1428, slip op. at 6 (1st Cir. Feb. 4, 1993);

United States v. Akinola, No. 92-1587, slip op. at 9 (1st Cir. Feb. 2,

1993); United States v. Ocampo-Guarin, 968 F.2d 1406, 1409 (1st Cir.

1992). Moreover, as already noted, the district court elsewhere in

its charge made clear that, to convict appellants of the offenses

charged, the jury had to find that appellants acted knowingly,

intentionally, and willfully. See Hallock, 941 F.2d at 42

(constructive possession instruction without any mention of knowledge

or intent is not plain error if knowledge and intent are defined

elsewhere in jury instructions). We see no instructional error, plain

or otherwise, that could have confused the jury into convicting

appellants without finding the requisite criminal intent.

Appellants additionally contend that the district court's

opening remarks to the jury on the concept of aiding and abetting

created an impermissible mandatory presumption. During these remarks,

the district court stated that "[a]iding and abetting means when two

or more persons assist each other, basically, in the commission of an

offense, . . . all of them are presumed to be responsible for the

whole acts committed together." This statement, while not a complete

explanation of the concept of aiding and abetting, did not create a

mandatory presumption of guilt. Instead, it merely explained, in a

preliminary fashion, that aiding and abetting is a form of agency in

which the law holds a defendant criminally responsible for the acts

and conduct of another person even though the defendant may not have

personally committed every act constituting the offense alleged. Of

-8-

course, before a defendant may be held criminally responsible as an

aider and abettor, the government must prove that the defendant

"associated himself with the underlying venture, participated in it as

something he wished to bring about, and sought by his actions to make

it succeed." United States v. Clifford, 979 F.2d 896, 899 (1st Cir.

1992); United States v. O'Campo, 973 F.2d 1015, 1020 (1st Cir. 1992)

("In order for aiding and abetting liability to be applicable, . . .

the evidence must establish that the defendant knowingly, willfully

and intentionally sought by his action or presence to make the

principal's criminal transaction succeed."). The district court, in

its subsequent charge, accurately instructed the jury in this regard.

We find no error in the district court's instruction on aiding and

abetting or in any of the other instructions to which appellants

object.3

C. Prosecutorial Misconduct

Appellants' final assertion of error involves alleged

prosecutorial misconduct. Appellants complain that the prosecutor

misstated the evidence during argument of the Rule 29 motion before

the trial judge4 and during closing argument to the jury.5

3. Appellants did not object to the district court's definition of
importation, which we held, in their co-defendants' appeal, to be
error, but not plain error. See Alfredo Alvarado, Nos. 91-2075, 2076,
slip op. at 9-11 (1st Cir. Dec. 31, 1992).

4. Since the jury was not present during the prosecutor's Rule 29
argument, appellants cannot claim that any part of that argument
improperly influenced the jury. The statements made to the judge
alone were, for the most part, fully supported by the record. Only
one seems unsupported. That involved whether appellants' vessel was
stationary when the FURA helicopter first approached. We find this

-9-

Appellants' arguments are severely hampered by their failure to have

made contemporaneous objections to the allegedly offensive remarks.

Absence of objection to a prosecutor's remarks limits appellate review

to the plain error standard. E.g., United States v. Panet-Collazo,

960 F.2d 256, 260 (1st Cir.), cert. denied sub nom. Diaz v. United

States, 113 S. Ct. 220 (1992); United States v. Rodriguez-Cardona, 924

F.2d 1148, 1154 (1st Cir.), cert. denied, 112 S. Ct. 54 (1991); United

States v. Griffin, 818 F.2d 97, 99-100 (1st Cir.), cert. denied, 484

U.S. 844 (1987); Fed. R. Crim. P. 52(b). This standard is not an easy

one to meet. We may not "'consider the ordinary backfires -- whether

or not harmful to a litigant's cause -- which may mar a trial

record.'" United States v. Mejia-Lozano, 829 F.2d 268, 272 (1st Cir.

1987) (quoting Griffin, 818 F.2d at 100)). Under the plain error

statement so isolated and insignificant that it could not amount to
plain error even if it had been uttered in the presence of the jury.
See, e.g., United States v. Panet-Collazo, 960 F.2d 256, 260 (1st
Cir.), cert. denied sub nom. Diaz v. United States, 113 S. Ct. 220
(1992); United States v. Prouse, 945 F.2d 1017, 1025 (8th Cir. 1991).

5. Appellants also contend that the prosecutor's improper
introduction of hearsay evidence constituted prosecutorial misconduct.
Appellants complain specifically of the testimony of Customs Service
radar operator Richard Cunnicelli that he saw flashing lights in the
water as the suspect aircraft approached the two vessels. On cross-
examination, Cunnicelli admitted that he never actually saw anything
in the water because his eyes were focused on the radar equipment.
Instead, he heard the pilot say, "I see lights." Appellants argue
that they were prevented from effectively objecting to this testimony
by the prosecutor's failure to provide Cunnicelli's rough notes to
appellants during discovery. Unlike their co-defendants, however,
appellants never requested these notes; nor did they object to the
admission of this testimony at trial; nor did they move to strike the
hearsay testimony. We are therefore foreclosed from considering this
issue on appeal absent plain error, which appellants are unable to
establish. See United States v. Serrano, 870 F.2d 1, 11 n.11 (1st
Cir. 1989).

-10-

standard, we will reverse a conviction only "'in those circumstances

in which a miscarriage of justice would otherwise result.'" United

States v. Santana-Camacho, 833 F.2d 371, 373 (1st Cir. 1987) (quoting

United States v. Young, 470 U.S. 1, 15 (1985)).

In determining whether a prosecutor's misstatements amounted

to plain error, we consider the prosecutor's comments within the

framework and context of the entire case. Rodriguez-Cardona, 924 F.2d

at 1154; Santana-Camacho, 833 F.2d at 373; United States v. Fuller,

768 F.2d 343, 347 (1st Cir. 1985). Within that context, we must

decide "whether the offending conduct so poisoned the well that the

trial's outcome was likely affected." Mejia-Lozano, 829 F.2d at 274.

We are guided in making this determination by a number of factors,

including the frequency and deliberateness of the prosecutor's

comments, the strength and clarity of the trial judge's instructions,

and the strength of the government's case against the defendant.

United States v. Mateos-Sanchez, 864 F.2d 232, 241 (1st Cir. 1988);

Mejia-Lozano, 829 F.2d at 274.

We need not recount each of the allegedly false statements

made by the prosecutor here. Suffice it to say that we have carefully

scrutinized the record and find that most of these so-called

misstatements involve controverted facts or reasonable inferences that

the prosecutor asked the jury to draw from the facts. There was

nothing improper in either instance. See United States v. Mount, 896

F.2d 612, 625 (1st Cir. 1990); United States v. Tucker, 820 F.2d 234,

237 (7th Cir. 1987).

-11-

Of the dozen or so statements challenged by appellants, only

one deserves further comment. During closing argument, the prosecutor

discussed appellants' attempt to evade apprehension:

It is only as they are about to get caught
that all of a sudden one vessel starts to veer
away.
Which vessel? How interesting that the
defendant [Alfredo Alvarado] says, the one that is
the lightest. That is the one that went off. That
is the one that took off. That was the decoy. It
could get away quicker.
And sure enough, the FURA helicopter in fact
went after the vessel that appeared to be getting
away.

To the extent that these remarks suggest that appellants' vessel

veered away, i.e., changed its course from north to west, the remarks

were misleading. It was the co-defendants' vessel that veered off in

a westerly direction, not appellants' vessel. Nevertheless, the FURA

helicopter initially pursued appellants' vessel, which apparently was

lighter and could get away quicker.

The above-quoted comments did not amount to plain error.

They were isolated and, in relation to the body of evidence received

during trial, relatively insignificant. The jury had heard testimony

from a number of government witnesses that appellants' vessel never

veered from its northerly direction before or during the helicopter's

pursuit, whereas their co-defendants' vessel at some point began

traveling in a more westerly direction. This testimony was

corroborated by a videotape showing the tracking and seizure of the

two vessels. The jury also heard several witnesses testify that the

FURA helicopter initially pursued appellants' vessel. Therefore, it

-12-

was unlikely that the jury would be duped or confused by the

prosecutor's misleading statements suggesting that the FURA helicopter

initially chased the vessel that had veered away from its previous

course.

The likelihood of jury confusion was further decreased by

the judge's repeated, explicit instructions to the jury that the

statements and arguments of counsel were not evidence in the case.

Mateos-Sanchez, 864 F.2d at 241; Mejia-Lozano, 829 F.2d at 274; United

States v. Giry, 818 F.2d 120, 133 (1st Cir.), cert. denied, 484 U.S.

855 (1987). Given the isolated nature of the comments, the strength

of the government's case against appellants, and the clarity of the

district court's instructions, it seems most unlikely that the

misleading statements could have affected the outcome of the case.

The plain error standard was not met.

Affirmed.

-13-