USCA1 Opinion

 

 February 23, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 91-2079 UNITED STATES OF AMERICA, Appellee, v. ANGEL LUIS MORALES-CARTAGENA, Defendant, Appellant. _____________________ No. 91-2080 UNITED STATES OF AMERICA, Appellee, v. WILFREDO ALVARADO-ORTIZ, Defendant, Appellant. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Jose Antonio Fuste, U.S. District Judge] ___________________ ____________________ Before Torruella, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Javier A. Morales Ramos and Jeffrey M. Williams with whom __________________________ _____________________ Indiano, Williams & Weinstein-Bacal was on brief for appellants. _______ __________________________ Jeanette Mercado-Rios, Assistant United States Attorney, with ______________________ whom Daniel F. Lopez-Romo, United States Attorney, and Jose A. Quiles ____________________ ______________ Espinosa were on brief for the United States. ________ ____________________ February 23, 1993 ____________________ CAMPBELL, Senior Circuit Judge. Angel Luis Morales _______________________ Cartagena and Wilfredo Alvarado Ortiz were convicted along with co- defendants Luis Alfredo Alvarado and Juan Eugenio Lorenzi Padilla of aiding and abetting in the unlawful possession with intent to distribute approximately 267 kilograms of cocaine aboard a United States vessel, 46 U.S.C. 1903(c)(1)(D) and (f), 18 U.S.C. 2, and aiding and abetting in the importation of cocaine into the customs territory of the United States, 21 U.S.C. 952(a), 18 U.S.C. 2. On appeal, Morales and Alvarado ask us to reverse their convictions, alleging an insufficiency of evidence, erroneous jury instructions, and prosecutorial misconduct. We affirm the convictions. I. I. A. Sufficiency of the Evidence ___________________________ Appellants assert that as there was insufficient evidence of criminal intent, the district court erroneously denied their Rule 29(a) motions for judgment of acquittal. In reviewing a properly preserved Rule 29 motion, we examine the evidence and all legitimate inferences therefrom in the light most favorable to the government to determine whether a rational jury could have found guilt beyond a reasonable doubt. E.g., United States v. Gonzalez-Torres, 980 F.2d ____ _____________ _______________ 788, 790 (1st Cir. 1992); United States v. Clotida, 892 F.2d 1098, _____________ _______ 1103 (1st Cir. 1989). The government argues that appellants waived their Rule 29 motions by presenting evidence after the government concluded its case-in-chief and by failing to renew the motions at the close of the -2- evidence. Were this so, our review would be for plain error only.1 E.g., United States v. Alfredo Alvarado, Nos. 91-2075, 2076, slip op. ____ _____________ ________________ at 6 (1st Cir. Dec. 31, 1992); United States v. Arango-Echeberry, 927 _____________ ________________ F.2d 35, 37 (1st Cir. 1991); Clotida, 892 F.2d at 1103. However, we _______ need not decide whether appellants waived their Rule 29 motions. Even assuming they did not, the evidence was sufficient for a rational jury to find that appellants were guilty beyond a reasonable doubt. Appellants urge that "mere presence" at the scene is not enough to convict a defendant of aiding and abetting in the commission of a crime. E.g., Clotida, 892 F.2d at 1104. They assert the ____ _______ evidence merely showed that they were present on a vessel in an area of the open sea where an air drop of bales of cocaine took place. They analogize their conviction to that of innocent crew members on board a sailboat taking part in the Grand Regatta Columbus2 solely because crew members in another sailboat in the regatta committed a crime. Appellants' analogy does not wash. ____________________ 1. We upheld the convictions of co-defendants Luis Alfredo Alvarado and Juan Eugenio Lorenzi Padilla against a challenge to the sufficiency of the evidence under the plain error standard. See ___ United States v. Alfredo Alvarado, Nos. 91-2075, 2076, slip op. at 5-7 _____________ ________________ (1st Cir. Dec. 31, 1992). The opinion in that case contains a more exhaustive account than we provide here of the relevant facts and circumstances surrounding the convictions of appellants and their co- defendants. 2. The Grand Regatta Columbus was a celebration of the 500th anniversary of Columbus' discovery of America in which hundreds of vessels from dozens of nations took part in a five-month race from Europe to America and back in the spring and summer of 1992. M.E. Malone, CADIZ to Boston; Grand regatta pays homage to Columbus' _____________________________________________________________ voyage, Boston Globe, July 5, 1992. ______ -3- Rather than being aboard only one of hundreds of vessels taking part in a regatta, appellants were in one of two vessels over which a suspect aircraft was seen to hover. Flying at night without lights and with no flight plan, the aircraft made tight circles about 300 to 500 feet above the two vessels. A Customs Service pilot following the suspect aircraft testified to having seen moving lights from the vessels. From this a reasonable jury could infer that the vessels wished to be visible to the aircraft. Bales of cocaine were dropped in proximity to the vessels from the aircraft, after which the vessels began heading north towards the shore with their navigation lights turned off. At first the two boats traveled together at a distance of about 100 yards. After the second vessel veered off in a westerly direction, a police helicopter was directed over the first vessel, occupied by the appellants. The helicopter was lit and identified as a police helicopter by the letters "FURA," which were twelve to sixteen inches long. A police sergeant aboard the helicopter gestured for appellants to stop. Appellants looked up, reduced speed, and then accelerated. When a police marine vessel subsequently approached, appellants' vessel veered off in order, it might be inferred, to get away. While other explanations were offered, a jury could reasonably conclude from this conduct that appellants were conscious of having engaged in criminal activity and were more than mere inadvertent bystanders at the drug drop. United ______ States v. Lopez, 944 F.2d 33, 40 (1st Cir. 1991); United States v. ______ _____ ______________ Hernandez-Bermudez, 857 F.2d 50, 54 (1st Cir. 1988); United States v. __________________ _____________ -4- Flores Perez, 849 F.2d 1, 3 (1st Cir. 1988); United States v. Alvarez, ____________ _____________ _______ 626 F.2d 208, 210 (1st Cir. 1980). The fishing gear found aboard both vessels was wrapped up and not prepared for fishing. No bait or fish were found on either vessel. No fishing nets were found in the area. As fishing was apparently not their purpose, the jury could infer that appellants had another purpose for their nighttime sojourn on the sea. Although no cocaine was found aboard appellants' vessel, four bales of cocaine were discovered on the companion vessel. A connection between the two vessels was suggested not only by their proximity when first seen but by evidence that appellant Wilfredo Alvarado Ortiz was related to co- defendant Luis Alfredo Alvarado. "While innocent association with those involved in illegal activities can never form the sole basis for a conviction, . . . the existence of a close relationship between a defendant and others involved in criminal activity can, as part of a larger package of proof, assist in supporting an inference of involvement in illicit activity." United States v. Ortiz, 966 F.2d _____________ _____ 707, 713 (1st Cir. 1992) (citing Nye & Nissen v. United States, 336 ____________ _____________ U.S. 613, 619 (1949)), cert. denied, 61 U.S.L.W. 3479 (1993). ____________ Criminal intent may, of course, be inferred from circumstantial evidence. E.g., United States v. Gomez-Villamizar, No. ____ _____________ ________________ 92-1228, slip op. at 9 (1st Cir. Dec. 23, 1992); Ortiz, 966 F.2d at _____ 711; United States v. Rodriguez- Alvarado, 952 F.2d 586, 590 (1st Cir. _____________ ___________________ 1991). Here, numerous factors, including the unlighted, clandestine airplane maneuvering over the two boats, the lights on the vessels, -5- their proximity to the cocaine when dropped, the fact that appellants' vessel was running without navigational lights, the finding of cocaine bales on the companion vessel, and the lack of support for their being engaged in fishing or some other innocent occupation, constituted substantial evidence from which a jury could infer that appellants possessed the requisite criminal intent. See Alfredo Alvarado, Nos. ___ ________________ 2075, 2076, slip op. at 6-7 (1st Cir. Dec. 31, 1992). B. Jury Instructions _________________ Appellants contend that the district court's instructions to the jury were erroneous, misleading, and created impermissible mandatory presumptions of guilt. Pointing to isolated excerpts from assorted instructions regarding intent to distribute, possession, and aiding and abetting, appellants complain that the jury was allowed to convict appellants for merely being present at the scene of a drug drop. We review a district court's charge as a whole, not in isolated excerpts. E.g., United States v. Hallock, 941 F.2d 36, 42 ____ _____________ _______ (1st Cir. 1991); United States v. Boylan, 898 F.2d 230, 244 (1st _____________ ______ Cir.), cert. denied, 111 S. Ct. 139 (1990); United States v. Cintolo, ____________ _____________ _______ 818 F.2d 980, 1003 (1st Cir.), cert. denied, 484 U.S. 913 (1987). ____________ Viewing the charge in this manner, appellants' arguments have little force. For example, appellants object to the district court's definition of possession with intent to distribute. The district court defined this element as possessing "with intent to deliver or transfer possession of a controlled substance to another person with ____ -6- or without any financial interest in the transaction." We see nothing ____________________________________________________ wrong in this. See Pattern Jury Instructions (Criminal Cases), Fifth ___ Circuit, Instruction 45, at III-73 (1991); Federal Judicial Center, Pattern Criminal Jury Instructions (1987), Instruction 112, at 147. Appellants contend that the instruction would permit a jury to convict appellants and their co-defendants for delivering cocaine to the police. This argument, however, ignores the fact that the district court clearly and correctly defined the elements of willfulness, intent, and knowledge elsewhere in the charge. Considering the charge as a whole, we find nothing that would cause the jury to convict appellants without finding the requisite criminal intent. Appellants make a similar argument as to the district court's definition of constructive possession. According to appellants, the definition was misleading because the required intentional aspects were only vaguely and ambiguously defined. Because appellants failed to make this objection to the charge at trial, we will reverse only upon a showing of "plain error." E.g., ____ United States v. De La Cruz, 902 F.2d 121, 122 (1st Cir. 1990); United _____________ __________ ______ States v. Nazzaro, 889 F.2d 1158, 1166 (1st Cir. 1989); Fed. R. Crim. ______ _______ P. 30. Appellants have not shown plain error. The district court defined constructive possession as "knowingly [having] the power and _________ the intention, at a given time, to exercise dominion or control over a _________ thing, either directly or through another person or persons." This definition, which clearly required both knowledge and intent, is similar to one we have approved in the past. See, e.g., United States _________ _____________ -7- v. Garcia, Nos. 92-1427, 1428, slip op. at 6 (1st Cir. Feb. 4, 1993); ______ United States v. Akinola, No. 92-1587, slip op. at 9 (1st Cir. Feb. 2, _____________ _______ 1993); United States v. Ocampo-Guarin, 968 F.2d 1406, 1409 (1st Cir. _____________ _____________ 1992). Moreover, as already noted, the district court elsewhere in its charge made clear that, to convict appellants of the offenses charged, the jury had to find that appellants acted knowingly, intentionally, and willfully. See Hallock, 941 F.2d at 42 ___ _______ (constructive possession instruction without any mention of knowledge or intent is not plain error if knowledge and intent are defined elsewhere in jury instructions). We see no instructional error, plain or otherwise, that could have confused the jury into convicting appellants without finding the requisite criminal intent. Appellants additionally contend that the district court's opening remarks to the jury on the concept of aiding and abetting created an impermissible mandatory presumption. During these remarks, the district court stated that "[a]iding and abetting means when two or more persons assist each other, basically, in the commission of an offense, . . . all of them are presumed to be responsible for the whole acts committed together." This statement, while not a complete explanation of the concept of aiding and abetting, did not create a mandatory presumption of guilt. Instead, it merely explained, in a preliminary fashion, that aiding and abetting is a form of agency in which the law holds a defendant criminally responsible for the acts and conduct of another person even though the defendant may not have personally committed every act constituting the offense alleged. Of -8- course, before a defendant may be held criminally responsible as an aider and abettor, the government must prove that the defendant "associated himself with the underlying venture, participated in it as something he wished to bring about, and sought by his actions to make it succeed." United States v. Clifford, 979 F.2d 896, 899 (1st Cir. _____________ ________ 1992); United States v. O'Campo, 973 F.2d 1015, 1020 (1st Cir. 1992) _____________ _______ ("In order for aiding and abetting liability to be applicable, . . . the evidence must establish that the defendant knowingly, willfully and intentionally sought by his action or presence to make the principal's criminal transaction succeed."). The district court, in its subsequent charge, accurately instructed the jury in this regard. We find no error in the district court's instruction on aiding and abetting or in any of the other instructions to which appellants object.3 C. Prosecutorial Misconduct ________________________ Appellants' final assertion of error involves alleged prosecutorial misconduct. Appellants complain that the prosecutor misstated the evidence during argument of the Rule 29 motion before the trial judge4 and during closing argument to the jury.5 ____________________ 3. Appellants did not object to the district court's definition of importation, which we held, in their co-defendants' appeal, to be error, but not plain error. See Alfredo Alvarado, Nos. 91-2075, 2076, ___ ________________ slip op. at 9-11 (1st Cir. Dec. 31, 1992). 4. Since the jury was not present during the prosecutor's Rule 29 argument, appellants cannot claim that any part of that argument improperly influenced the jury. The statements made to the judge alone were, for the most part, fully supported by the record. Only one seems unsupported. That involved whether appellants' vessel was stationary when the FURA helicopter first approached. We find this -9- Appellants' arguments are severely hampered by their failure to have made contemporaneous objections to the allegedly offensive remarks. Absence of objection to a prosecutor's remarks limits appellate review to the plain error standard. E.g., United States v. Panet-Collazo, ____ ______________ _____________ 960 F.2d 256, 260 (1st Cir.), cert. denied sub nom. Diaz v. United ______________________ ____ ______ States, 113 S. Ct. 220 (1992); United States v. Rodriguez-Cardona, 924 ______ _____________ _________________ F.2d 1148, 1154 (1st Cir.), cert. denied, 112 S. Ct. 54 (1991); United ____________ ______ States v. Griffin, 818 F.2d 97, 99-100 (1st Cir.), cert. denied, 484 ______ _______ ____________ U.S. 844 (1987); Fed. R. Crim. P. 52(b). This standard is not an easy one to meet. We may not "'consider the ordinary backfires -- whether or not harmful to a litigant's cause -- which may mar a trial record.'" United States v. Mejia-Lozano, 829 F.2d 268, 272 (1st Cir. _____________ ____________ 1987) (quoting Griffin, 818 F.2d at 100)). Under the plain error _______ ____________________ statement so isolated and insignificant that it could not amount to plain error even if it had been uttered in the presence of the jury. See, e.g., United States v. Panet-Collazo, 960 F.2d 256, 260 (1st __________ ______________ _____________ Cir.), cert. denied sub nom. Diaz v. United States, 113 S. Ct. 220 ______________________ ____ _____________ (1992); United States v. Prouse, 945 F.2d 1017, 1025 (8th Cir. 1991). _____________ ______ 5. Appellants also contend that the prosecutor's improper introduction of hearsay evidence constituted prosecutorial misconduct. Appellants complain specifically of the testimony of Customs Service radar operator Richard Cunnicelli that he saw flashing lights in the water as the suspect aircraft approached the two vessels. On cross- examination, Cunnicelli admitted that he never actually saw anything in the water because his eyes were focused on the radar equipment. Instead, he heard the pilot say, "I see lights." Appellants argue that they were prevented from effectively objecting to this testimony by the prosecutor's failure to provide Cunnicelli's rough notes to appellants during discovery. Unlike their co-defendants, however, appellants never requested these notes; nor did they object to the admission of this testimony at trial; nor did they move to strike the hearsay testimony. We are therefore foreclosed from considering this issue on appeal absent plain error, which appellants are unable to establish. See United States v. Serrano, 870 F.2d 1, 11 n.11 (1st ___ ______________ _______ Cir. 1989). -10- standard, we will reverse a conviction only "'in those circumstances in which a miscarriage of justice would otherwise result.'" United ______ States v. Santana-Camacho, 833 F.2d 371, 373 (1st Cir. 1987) (quoting ______ _______________ United States v. Young, 470 U.S. 1, 15 (1985)). _____________ _____ In determining whether a prosecutor's misstatements amounted to plain error, we consider the prosecutor's comments within the framework and context of the entire case. Rodriguez-Cardona, 924 F.2d _________________ at 1154; Santana-Camacho, 833 F.2d at 373; United States v. Fuller, _______________ ______________ ______ 768 F.2d 343, 347 (1st Cir. 1985). Within that context, we must decide "whether the offending conduct so poisoned the well that the trial's outcome was likely affected." Mejia-Lozano, 829 F.2d at 274. ____________ We are guided in making this determination by a number of factors, including the frequency and deliberateness of the prosecutor's comments, the strength and clarity of the trial judge's instructions, and the strength of the government's case against the defendant. United States v. Mateos-Sanchez, 864 F.2d 232, 241 (1st Cir. 1988); ______________ ______________ Mejia-Lozano, 829 F.2d at 274. ____________ We need not recount each of the allegedly false statements made by the prosecutor here. Suffice it to say that we have carefully scrutinized the record and find that most of these so-called misstatements involve controverted facts or reasonable inferences that the prosecutor asked the jury to draw from the facts. There was nothing improper in either instance. See United States v. Mount, 896 ___ _____________ _____ F.2d 612, 625 (1st Cir. 1990); United States v. Tucker, 820 F.2d 234, _____________ ______ 237 (7th Cir. 1987). -11- Of the dozen or so statements challenged by appellants, only one deserves further comment. During closing argument, the prosecutor discussed appellants' attempt to evade apprehension: It is only as they are about to get caught that all of a sudden one vessel starts to veer away. Which vessel? How interesting that the defendant [Alfredo Alvarado] says, the one that is the lightest. That is the one that went off. That is the one that took off. That was the decoy. It could get away quicker. And sure enough, the FURA helicopter in fact went after the vessel that appeared to be getting away. To the extent that these remarks suggest that appellants' vessel veered away, i.e., changed its course from north to west, the remarks were misleading. It was the co-defendants' vessel that veered off in a westerly direction, not appellants' vessel. Nevertheless, the FURA helicopter initially pursued appellants' vessel, which apparently was lighter and could get away quicker. The above-quoted comments did not amount to plain error. They were isolated and, in relation to the body of evidence received during trial, relatively insignificant. The jury had heard testimony from a number of government witnesses that appellants' vessel never veered from its northerly direction before or during the helicopter's pursuit, whereas their co-defendants' vessel at some point began traveling in a more westerly direction. This testimony was corroborated by a videotape showing the tracking and seizure of the two vessels. The jury also heard several witnesses testify that the FURA helicopter initially pursued appellants' vessel. Therefore, it -12- was unlikely that the jury would be duped or confused by the prosecutor's misleading statements suggesting that the FURA helicopter initially chased the vessel that had veered away from its previous course. The likelihood of jury confusion was further decreased by the judge's repeated, explicit instructions to the jury that the statements and arguments of counsel were not evidence in the case. Mateos-Sanchez, 864 F.2d at 241; Mejia-Lozano, 829 F.2d at 274; United ______________ ____________ ______ States v. Giry, 818 F.2d 120, 133 (1st Cir.), cert. denied, 484 U.S. ______ ____ ____________ 855 (1987). Given the isolated nature of the comments, the strength of the government's case against appellants, and the clarity of the district court's instructions, it seems most unlikely that the misleading statements could have affected the outcome of the case. The plain error standard was not met. Affirmed. ________ -13-