**UNITED STATES of America, Appellee,**

v.

**Paul J. CLIFFORD, Defendant, Appellant.**

**No. 92–1748.**

United States Court of Appeals, First Circuit.

Heard Oct. 7, 1992.

Decided Nov. 20, 1992.

---

Charles P. McGinty, Federal Defender, for defendant, appellant.

Brien T. O'Connor, Asst. U.S. Atty., with whom A. John Pappalardo, U.S. Atty., was on brief, for appellee.

Before TORRUELLA, Circuit Judge, COFFIN, Senior Circuit Judge, and BOUDIN, Circuit Judge.

COFFIN, Senior Circuit Judge.

Defendant was convicted by a jury, under Count 1, for conspiracy to possess with intent to distribute marijuana, 21 U.S.C. §§ 841(a)(1) and 846, and, under Count 23, for aiding and abetting the possession with intent to distribute, 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Defendant appeals from denials of motions for acquittal addressed to each count, arguing that the verdict relies impermissibly on speculative inference. We find that the evidence, though circumstantial, was sufficient to support the verdict.

Before recapping and weighing the evidence, we briefly note the standards governing our review. We consider the evidence in the light most favorable to the prosecution. *United States v. Torres Lopez*, 851 F.2d 520, 527 (1st Cir.1988). We therefore "draw[ ] all legitimate inferences and resolv[e] all credibility determinations in favor of the verdict." *United States v. Angiulo*, 897 F.2d 1169, 1197 (1st Cir.1990). "Nor does the government have to disprove every reasonable hypothesis of innocence." *Torres Lopez*, 851 F.2d at 527–28.

To support a verdict of guilt, the evidence must prove each element of a conspiracy charge beyond a reasonable doubt. These elements are the existence of a conspiracy (not in issue here), the defendant's knowledge of it, and his voluntary participation in it. In addition, the government must show defendant's intent both to

agree with his co-conspirators and to commit the substantive offense. *United States v. David*, 940 F.2d 722, 735 (1st Cir.1991). When the conspiracy concerns drugs, the evidence must show the defendant's intent to commit the underlying drug offense. *See United States v. Ocampo*, 964 F.2d 80, 82 (1st Cir.1992). The evidence, of course, may be circumstantial. *United States v. Rivera–Santiago*, 872 F.2d 1073, 1079 (1st Cir.1989).

We turn now to the facts that a jury reasonably could find and the inferences it legitimately could draw in this case.

■ The overall factual background concerns the operations of a Boston-based marijuana smuggling organization. The organization had offloaded marijuana twice previously at the Trio Algarvio fish processing plant in New Bedford. The facts in this case involve a botched effort on May 16 and 17, 1986. A vessel, the *Breton Seahorse*, loaded with 26 tons of marijuana, intended to discharge its cargo at the Trio Algarvio plant. Instead, the Coast Guard intercepted the ship on May 16, and impounded it at Woods Hole.

At about 6 p.m. on the evening of May 16, the intended offloaders assembled at a warehouse in South Boston. None of the offloaders at trial testified to knowing at this point that the venture involved drugs. The 14 men, clad in dark clothes, waited together in a single refrigeration truck for an hour before driving for another hour to the Trio Algarvio plant.

One of the offloading crew was Matthew McGee, who had participated in two similar marijuana offloading operations in 1983 and 1984. McGee also helped to organize the offload of the *Breton Seahorse*.

During the trip to the plant, according to witness Brian Small, there was talk about unloading marijuana, and "a few people said, talked about, you know, maybe stealing a little bit for their own self or that kind of thing." As the crew was ending its journey to the plant, Small also heard a voice comment "[O]h, I hope this thing goes down, I needed [sic] the money ... [and] I can't wait until this pot comes in."

Once in New Bedford, all the men from the truck entered the plant, located on the water, where they spent nine hours waiting for the *Breton Seahorse*. During their long wait, Small overheard renewed discussion "same as like [in] the truck" about the planned marijuana offload. Other witnesses overheard discussion that the crew was waiting for a boat and speculation on the boats that were visible from a window overlooking the harbor "if that was it or not."

Shortly before 5 a.m. on May 17, no boat having arrived, the crew left the fish processing plant together in a single truck. The police soon stopped the truck and apprehended the crew hiding in the back. The only direct evidence implicating defendant is the fact that he was one of the persons on the truck when it was stopped and inspected.

From the time the entire crew assembled in South Boston to the time of their arrest, there was no evidence that any member of the offloading crew departed, tried to depart, or otherwise separated himself from the enterprise. Nor was there any evidence of coercion to keep the offloaders in place.

We acknowledge that these are not all the facts or testimony in the case. In particular, other witnesses remembered no conversations about marijuana, and no witness identified defendant as present on the truck en route to the plant or in the plant itself. But these are the facts, considered favorably to the government's case, that support the jury's verdict.

From these facts, the jury reasonably could draw a series of inferences to connect defendant to the conspiracy. The jury could find from defendant's presence in the truck at the time of arrest, that he had been with the others inside the plant. Because everyone inside the plant except the drivers, who were identified, had arrived together in the back of the refrigeration truck, the jury could find that defendant had been in the truck on the trip to the plant, too. Because there had been discussion of the imminent shipment of marijuana in the truck and the "same" kind of discus-

sion in the plant, the jury could find that defendant knew he was engaged in a drug transaction. Indeed, the jury could believe it likely that McGee, who had participated in planning this operation, would have indicated that it was a marijuana offloading operation. Finally, the jury could find that because at no time during the night had he tried to dissociate himself from the enterprise, defendant agreed to join both in the conspiracy and in the commission of the substantive offense.

Defendant argues vigorously that this reasoning is "linking inference upon inference in an impermissible chain to support a conviction." Admittedly, the chain contains only one direct piece of evidence of defendant's association with the operation, his arrest in the truck, but the links as a whole are forged reasonably. We can do no better in responding to defendant's argument than to quote what our colleague Judge Aldrich wrote almost thirty years ago:

> The defendant cautions us against "piling inference upon inference." As interpreted by the defendant this means that a conviction could rarely be justified by circumstantial evidence. *See* 1 Wigmore, Evidence, § 41 (3d ed. 1940). The rule is not that an inference, no matter how reasonable, is to be rejected if it, in turn, depends upon another reasonable inference; rather the question is merely whether the total evidence, including reasonable inferences, when put together is sufficient to warrant a jury to conclude that defendant is guilty beyond a reasonable doubt.

*Dirring v. United States,* 328 F.2d 512, 515 (1st Cir.1964) (citations omitted); *see also United States v. Clotida,* 892 F.2d 1098, 1104 (1st Cir.1989). In this case, we conclude that the several inferences are rationally based on the underlying facts and that the overall evidence adequately supports the conviction for conspiracy.

■ This does not quite end our inquiry, for defendant also was convicted of aiding and abetting possession with the intent to distribute marijuana. For the conviction to stand, the government must prove that de-

fendant associated himself with the underlying venture, participated in it as something he wished to bring about, and sought by his actions to make it succeed. *Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949).

■ We agree with the government that the evidence of defendant's actions and participation satisfies these strictures. As we noted above, there was sufficient evidence that defendant gathered with the other offloaders at the South Boston warehouse, travelled to New Bedford, and spent the night waiting to unload a vessel that never arrived. From these secretive and suspicious circumstances alone, the jury reasonably could infer that defendant was participating knowingly in a criminal venture.

Defendant argues that even if the evidence supports a finding that he agreed to participate in an offload of marijuana, it does not support a finding that he intended to participate in the distribution of the drug. We disagree. The need for a truckload of offloaders points to large quantities of marijuana not intended for immediate personal use. *See United States v. Geer,* 923 F.2d 892, 894–95 (1st Cir.1991) (jury could infer existence of conspiracy to distribute drugs from large quantities of drugs involved). From the size of the operation, the jury could infer that defendant knew that the offload was but one step in the distribution chain. The evidence of defendant's participation in an offload of such large quantities of marijuana is sufficient proof that he intended to distribute the drug. *See Rivera–Santiago,* 872 F.2d at 1081–82 (defendant who stored truckload of marijuana found to be aider and abettor). We therefore hold that there was sufficient evidence to support the conviction for aiding and abetting the possession with intent to distribute.

We deem it appropriate, nonetheless, to comment on the paucity of direct evidence implicating defendant in this enterprise. Although constrained to find that the circumstantial evidence presented does support defendant's conviction, we caution that the inferential chain is stretched close to its

breaking point. The alloy for forging an inferential chain should contain more direct and less circumstantial evidence lest it snap at the first test.

Given the profusion of individuals embroiled in this venture,[1] and the length of time which the offloading crew spent together, it is difficult to understand the government's inability to find at least one person who could give testimony directly implicating defendant. Prosecutors must be wary of the hazards of relying on inference when harder evidence is available.

*Affirmed.*

---

**1.** The failed offload of the *Breton Seahorse* resulted in an indictment against defendant and 25 co-defendants. Still others were granted immunity in return for their testimony.